## OSCAR S. MCINTOSH v. STATE OF NEBRASKA.

FILED DECEMBER 4, 1920.      No. 21287.

1. **Information: SUFFICIENCY: CATTLE STEALING.** An information based upon a violation of section 8632, Rev. St. 1913 (making cattle stealing a distinct offense), which avers that the accused, at a time and place named, did "unlawfully and feloniously steal, take and carry away one red steer with white face, branded T X on left side, the personal property of Vernon L, Hanson, of the value of sixty dollars," sufficiently charges the crime.

2. **Criminal Law: INSTRUCTION.** An instruction which does not purport to set out all the essential elements constituting the offense will not be held to be prejudicially erroneous, when by another instruction the whole case is covered and the essential elements necessary to be established are set out, when there is no inconsistency in the two instructions.

3. ———: ———: **LARCENY.** An instruction which defines larceny as the unlawful and felonious stealing, taking and carrying away of the personal property of another, of some value, with the felonious intent on the part of the taker to permanently deprive the owner of his property, embraces all the essential elements of the crime. In such case it is not necessary to add, "and with the intent to convert the stolen property to the taker's own use," or words of similar import. In so far as *Ladeaux v. State*, 74 Neb. 19, and *Cheney v. State*, 101 Neb. 461, announce a different rule, they are disapproved.

4. ———: ———: **REASONABLE DOUBT.** The instruction defining "reasonable doubt," set out in the opinion, and, under the circumstances, *held* correct.

5. **Larceny: ASPORTATION.** Any removal of the property, after the same is under the complete control of the taker, from the spot where found, with the requisite intent of the taker to steal, is a sufficient asportation to satisfy the law.

6. ———: ———. When one, with a felonious intent to steal a steer and sell the meat, to aid himself in such purpose, shoots and kills such animal and afterwards, in furtherance of such intent, drags the carcass from the spot where killed, and for fear of detection flees, he may be convicted of larceny of the steer.

7. **Criminal Law: EVIDENCE: CONFESSION.** Evidence examined, and *held* that the admissions of the accused that he committed the

McIntosh v. State.

crime were voluntary, and the evidence in that behalf properly received.

ERROR to the district court for Sioux county: WILLIAM H. WESTOVER, JUDGE. *Affirmed.*

*Earl McDowell,* for plaintiff in error.

*Clarence A. Davis, Attorney General,* and *C. L. Dort, contra.*

DAY, J.

Oscar S. McIntosh was convicted in the district court for Sioux county on a charge of stealing a steer, and sentenced to the penitentiary for an indeterminate period of from one to ten years. As plaintiff in error he has brought the case here for review.

It is first argued that the information does not charge an offense against the laws of this state, for the reason that there is no charge that the steer was taken without the owner's consent; that it was taken with the intent to deprive the owner of its future use; that it was taken with the intent to convert it to the taker's use. The information is in the usual form, and, omitting the more formal parts, avers that the accused, at a time and place named, did "unlawfully and feloniously steal, take and carry away one red steer with white face, branded T X on left side, the personal property of Vernon L. Hanson, of the value of sixty dollars, contrary to the form of the statute," etc. The offense thus charged is based upon a violation of section 8632, Rev. St. 1913, which, so far as pertinent, provides: "Whoever steals any cow, steer, bull, heifer or calf, of any value * * * shall be imprisoned in the penitentiary not more than ten years nor less than one year." It will be noted that the information follows substantially the language of the statute. It has frequently been held that, when the statute states the elements of a crime, it is generally sufficient in an information or indictment to describe such crime in the language of the statute. *Goff v. State,* 89 Neb. 287, and cases cited.

The objections made to the information in the case before us have been met by the former decisions of this court, and other courts, a few of which are cited. In *Chezem v: State*, 56 Neb. 496, the information was a charge of larceny from the person, in violation of a statute (Rev. St. 1913, sec. 8627) which provided: "Whoever steals property of any value by taking the same from the person of another without putting said person in fear, by threats or the use of force and violence," etc. The information averred that the accused from the person of the prosecuting witness did "unlawfully and feloniously steal, take and carry away" certain described property. It was held that the information sufficiently charged that the taking was against the will of the owner.

In *Martin v. State*, 67 Neb. 36, the information charged that the defendant "unlawfully and feloniously, * * * from the person and against the will of the said B. F. Strawn, did steal, take and carry away, * * * the said personal property," etc. In commenting on the sufficiency of the information, the court said: "While not charging in direct terms that the property was taken with intent on the part of the defendant to convert it permanently to his own use, this element of the crime charged is manifestly included in the statement that he feloniously took and carried away the property with intent to steal. The charge that the property was stolen embodies the idea that it was taken without the consent of the owner, and with the intent of the taker to wrongfully convert it to his own use." In the case last above cited it was apparently taken for granted that an element of the crime was an intention to convert the property to the taker's own use. Whether this is a necessary element of the crime of larceny will be hereinafter discussed.

In *Rema v. State*, 52 Neb. 375, the information was based upon the same statute as in the case now before us, and charged that the accused "unlawfully and feloniously did steal, take and drive away one cow." It was held that the information sufficiently charged that the taking

McIntosh v. State.

was with the felonious intent to permanently deprive the owner of his property.

As bearing on the sufficiency of the information, see *Brown v. State,* 88 Neb. 411; *State v. Perry,* 94 Ark. 215; *State v. Jones,* 41 La. Ann. 784; *State v. Jones,* 7 Nev. 408; *Wedge v. State,* 7 Lea (Tenn.) 687; *State v. Griffin,* 79 Ia. 568; *State v. Fitzpatrick,* 9 Houst. (Del.) 385.

We are convinced that the objections to the sufficiency of the information are not well founded.

It is also urged that the court erred in giving instruction No. 8. The criticism directed against this instruction is that, in defining "larceny," the court omitted the word "felonious;" that to constitute larceny there must be a "felonious taking." It is also urged that the instructions as a whole are faulty, in that they omit the element that the taking of the property was with the intention to convert it to the taker's use. By instruction No. 8 the court told the jury: "That larceny has been defined as an unlawful taking and carrying or leading away the personal property, the property of another, without the consent and against the will of the owner and with the intent to permanently deprive the owner of such property." Standing alone this instruction may be open to criticism for the failure to incorporate the idea of "felonious taking" of the property. It has been held, however, that the use of the word "felonious" is not necessary in an instruction defining larceny, if words of equivalent import or meaning are employed. *Philamalee v. State,* 58 Neb. 320. We do not deem it necessary, however, to pass upon the correctness of instruction No. 8 as an abstract definition of larceny. This court has repeatedly held that the charge to the jury must be considered as a whole, and when thus considered, if the law is correctly stated and the jury could not have been misled, that error will not lie for some defect in some instruction.

By instruction No. 2 the court charged the jury that the material allegations of the information, which the state must prove, are: "(1) The time and place therein charged;

(2) that the defendant then and there being did then and there unlawfully and feloniously steal, take and carry away one red steer; (3) that said red steer was then and there the personal property of Vernon L. Hanson; (4) that said red steer was then and there of some value; and (5) that the unlawful and felonious taking was with the intent of the defendant to permanently deprive said Vernon L. Hanson of his said property. If you are convinced by the evidence in this case, beyond a reasonable doubt, of the truth of each one and all of the foregoing material allegations of the information, then you should find the defendant guilty. If you are not so convinced, or if you entertain a reasonable doubt as to the truth of either one or all of said material allegations, then you should give the defendant the benefit of such doubt and acquit him." This instruction clearly required of the jury that they must find beyond a reasonable doubt that the property was taken with a felonious intent before they could convict the defendant. As a whole the charge of the court clearly met the criticism of the omission of a felonious taking.

If there was error in the giving of instruction No. 8, it was without prejudice. But it is further argued that the instructions do not embody the idea that the taking of the property must have been with the intention of converting it to the taker's use. The question is fairly presented whether the taking with the intention of converting the property to the taker's use is an essential element of the crime of larceny. Upon this question there is a conflict of authority, and our own decisions at first blush would appear not harmonious. In *Thompson v. People*, 4 Neb. 524, simple larceny was defined as the "felonious taking and carrying away of the personal goods of another, with intent to deprive the owner permanently of his property therein." This definition was approved in *Mead v. State*, 25 Neb. 444.

Bishop in his valuable work on Criminal Law defines larceny to be: "The taking and removing, by trespass, of personal property which the trespasser knows to belong

either generally or specially to another, with the felonious intent to deprive him of his ownership therein; and, perhaps should be added, for the sake of some advantage to the trespasser—a question on which the decisions are not harmonious." 2 Bishop, Criminal Law (8th ed.) sec. 758. Many definitions with varying expressions are cited by the author.

In *Ladeaux v. State*, 74 Neb. 19, and in *Cheney v. State*, 101 Neb. 461, there is injected into the definition of larceny, as a necessary element, that the property must be taken with the "felonious intent to thereby convert the stolen property to the defendant's own use." By the weight of authority it is not a necessary element that the property be taken for some advantage of the taker or for his use. In 17 R. C. L. 9, sec. 8, it is said: "There is some authority, especially among the earlier decisions, to the effect that the taking must have been '*lucri causa*,' that is, for the sake of gain or pecuniary advantage to the taker. * * * This view, however, has not been uniformly approved by the courts, and according to the weight of modern decisions the element of personal gain to the taker or to some third person is not essential, it being regarded as sufficient if there is an intention permanently to deprive the owner of his property." See cases cited.

From what has been said, it follows that all the essential elements of the crime were set forth in the instructions, and that the objections are not well founded. The expressions in *Ladeaux v. State* and *Cheney v. State, supra*, in so far as they embody as an essential element of larceny that the taking must be with a felonious intent to convert the stolen property to the taker's own use, are disapproved.

The plaintiff in error also complains, of the giving of instruction No. 5, defining "reasonable doubt," as follows: "You are instructed that a reasonable doubt within the meaning of the law is such a doubt that if the same were interposed in the ordinary concerns and affairs of life would cause an ordinarily prudent man to pause and hesitate before acting on the truth of the matter charged. A

doubt to justify an acquittal must be reasonable, and it must arise from a candid and impartial investigation of all the evidence in the case, and unless it is such that, were the same kind of doubt interposed in the graver transactions of life it would cause a reasonable and prudent man to hesitate and pause, it is not sufficient to authorize a verdict of not guilty. It must be a doubt which arises from the evidence or want of evidence in the case, and if it does not so arise it is not a reasonable doubt within the meaning of the law. If, upon consideration of all the evidence, you can say you have an abiding conviction of the truth of the charge, amounting to a moral certainty, then you are satisfied beyond a reasonable doubt."

This instruction is assailed as coming within the criticism of instructions in *Brown v. State,* 88 Neb. 411, *Flege v. State,* 90 Neb. 390, and *Hodge v. State,* 101 Neb. 419. A comparison of the instructions in the cases last above cited with instruction No. 5 will disclose that this instruction does not contain the sentences criticised in those cases. The sentence in the instruction in question, "A doubt to justify an acquittal must be reasonable," etc., was criticised in *Bartels v. State,* 91 Neb. 575, in connection with another sentence in the instruction in that case, in which the jury were told that the rule that requires proof of guilt beyond a reasonable doubt "is not intended to aid any one who is in fact guilty to escape," and the giving of the instruction was held prejudicially erroneous. On the other hand, in *Maxfield v. State,* 54 Neb. 44, an instruction containing the identical sentence, as in instruction No. 5, "A doubt to justify an acquittal must be reasonable," etc., was approved. The sentence in instruction No. 5, "It must be a doubt which arises from the evidence or want of evidence," etc., is substantially the same as found in *Goemann v. State,* 100 Neb. 772, which was held free from error.

We think the instruction in the case at bar fairly states the meaning of the term "reasonable doubt," and that there was no error in giving it.

Plaintiff in error also urges that the evidence does not support the verdict. The record shows that on the day the offense was committed, but prior thereto, the accused arranged to sell a chunk of meat; that he borrowed a rifle of one man, an axe of another, and in company with a companion left town in an automobile. On the afternoon of the same day, the complaining witness had occasion to go to his ranch, and, observing some commotion among his cattle, drove over in that direction. On his approach he saw an automobile rapidly driving in his pasture. Two men were in the car, but he was not near enough to identify the occupants of the car. On further investigation he discovered that one of his cattle, the steer in question, had been killed, its head severed from the body, the carcass having been dragged some distance from where the animal was shot. The carcass was still bleeding at the time complaining witness saw it, indicating that the killing was recently done.  Accused, on being arrested, admitted that he committed the act.  In the confession he stated that he shot the steer while sitting in the automobile, that it was dragged a distance from the spot and the head severed with the axe by his companion.  The accused, in company with the sheriff, the county attorney, and a brother of the accused, drove over the route taken, the accused driving the car.  He pointed out where the animal was shot, and where it was dragged, he indicated where the axe had been thrown in the pasture and got out of the automobile and produced it. On being arraigned in county court on the complaint, he pleaded not guilty, but later asked to be taken before the county judge, and, on being brought into court, told the court he was guilty.

On this state of facts it is suggested that the circumstances do not show the stealing and carrying away of the steer; that there was no possession by the accused of the steer as a live animal.  The testimony shows a clear and unmistakable intent on the part of the accused to steal the steer and sell the meat.  To aid himself in carrying out this purpose, he shot and killed the steer, took posses-

sion of the carcass, dragged it some distance from the spot, where, after severing the head from the body, he became apprehensive of detection, and fled. We think the facts bring the case within the inhibition of the statute. Of course, if the steer had been accidently or recklessly killed, and the carcass had been found by the defendant and feloniously stolen, such facts would not be a stealing of the steer within the meaning of the statute. This distinction is made in *Hunt v. State,* 55 Ala. 138. The case of *Frazier v. State,* 85 Ala. 17, is very similar to the case at bar. In that case defendant was indicted for stealing a hog. With the intention of feloniously stealing the hog, he shot and killed it, and concealed the carcass with pine tops, in order to conceal it until he could return and remove it. He then told the owner that he had found one of his hogs dead in the woods and obtained permission from him to remove the carcass, which he did. The court said: "If the defendant shot and killed the hog, with the larceny of which he is charged, in a pine thicket in the field, with felonious intent, and covered it with pine tops, in order to conceal it until he could return and secretly remove it; and if he subsequently removed it, in pursuance of the previous felonious intent, there was, in the legal acceptance of the terms, a taking and carrying away, sufficient to complete the offense, though the removal may have been with the consent of the owner, if such consent was procured by intentional misrepresentation and deception." The same principle is recognized in *People v. Smith,* 112 Cal. 333, and *Kemp v. State,* 89 Ala. 52.

One of the elements of larceny is asportation. It is not necessary, however that the property stolen be retained in the possession of the thief. To remove it with the requisite felonious intent from one part of the premises to another, or from the spot where it is found, is a sufficient asportation. 17 R. C. L. 22, sec. 24, and cases cited. Applying this rule to the facts in the case at bar, it is clear there was a sufficient asportation to satisfy the law.

It is further argued that the admissions of guilt made by the accused to the sheriff and others after his arrest were improperly admitted in evidence. In this regard the record shows that while accused was being returned to the state, and before any statement was made by the accused, the sheriff told him that any statement he made might be used against him; that no threats were made or any inducement held out to the accused; that his statement was voluntarily made. On cross-examination, however, the sheriff stated that he told the accused that Hardman had made an affidavit, and that Hardman was not playing square with him, and that these statements were made for the purpose of getting him to talk. This was a species of deception which, while hardly commendable, does not, as we view it, make the subsequent act and admissions of the accused inadmissible. After this conversation on the train, the accused made several admissions, and made the trip over the route, and gave the details of the crime, as has before been stated. Under all of the circumstances, we think the testimony was properly received.

From an examination of the record, and the questions presented, we find no reversible error.

AFFIRMED.