STATE OF NEBRASKA, APPELLEE, V. LEE TRUMAN
STEVENSON, APPELLANT.
STATE OF NEBRASKA, APPELLEE, V. JAMES JACKSON,
APPELLANT.

264 N. W. 2d 848

Filed April 19, 1978.   Nos. 41370, 41371.

Thomas M. Kenney, Douglas County Public Defender, and Bennett G. Hornstein, for appellants.

Paul L. Douglas, Attorney General, and Ralph H. Gillan, for appellee.

Heard before SPENCER, BOSLAUGH, MCCOWN, BRODKEY, and WHITE, JJ., and KUNS, Retired District Judge.

WHITE, C. THOMAS, J.

On July 24, 1976, a vacant residence at 2120 Lothrop Street, Omaha, Nebraska, caught fire and was substantially damaged. The defendants, Lee Truman Stevenson and James Jackson, were arrested, charged, and convicted of arson in the first degree at a joint trial. At trial, the defendants were represented by an assistant public defender.

After the fire was extinguished, on inspection by an acting battalion chief and the arson bureau, a plastic container containing a small quantity of gasoline was found in the house. The place where the fire started had the blisters on painted surfaces and markings characteristic of a fire accelerant. The house gave off a strong odor of gasoline. Thus, from the beginning, the fire department and the police investigators knew the fire was intentionally set. The fire was set on the second floor of the home. Apparently a large quantity of gasoline was used. In the opinion of the arson investigator, the fumes arising from such an amount of gasoline would cause a flash explosion, resulting in the burning of anyone who struck a match in the upstairs.

At about 11:45 p.m., or 15 minutes after the fire was reported, an arson investigator who had not yet been to the scene and a sergeant of the Omaha police department were summoned to Lutheran Hospital in Omaha, where, shortly before, the defendants had been admitted suffering from severe burns over 50 to 75 percent of their bodies. Defendant Jackson had been sent to St. Joseph's Hospital. An interview with all burn victims is a standard procedure of the arson squad. At the time of the interview with the defendants, they were in the intensive care units of the hospitals suffering from first, second, and third-degree burns. Permission was obtained from an attending physician and the defendants were interviewed. The defendants at this time were neither under suspicion nor under arrest. The defendant Stevenson was interviewed first. Stevenson stated that three men ''confronted'' him and Jackson, took them to the Lothrop Street house, and set them afire. Essentially the same story was told by Jackson.

Defendants assign as error the admission of this exculpatory evidence. The interrogations were neither prolonged nor accusatory. Since the defend-

ants were not in custody, Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, does not apply. Although the defendants did move to suppress other statements made to police officers, they did not ask to suppress these statements prior to trial. The defendants' objections are without merit.

The defendant Stevenson further told the arson investigator that he knew one of the persons who had assaulted him, but that he wouldn't disclose the identity to anyone unless it would be Officers O'Donnell and Thompson of the Omaha police department whom he knew. On July 25, 1976, Officer Thompson received a message at the police station to contact the defendant Stevenson in the University Hospital. Sometime between 4 p.m. and 6 p.m., Officer Thompson went to see the defendant Stevenson. The defendant, in the presence of one Linda Williams, told the officer that several people had tried to "get him" recently and that he and his friend, defendant Jackson, were taken to the Lothrop Street house at gunpoint. The gunmen poured gasoline in the house, ignited it, and ran from the house. Stevenson and Jackson then broke out a window, ran from the house, and were picked up by Linda Williams in Stevenson's car 2 blocks from the house.

The following day, July 26, Officers Thompson and O'Donnell returned to the University Hospital to again talk to Stevenson. Stevenson repeated the story told the previous day. Later that evening the officers contacted defendant Jackson at St. Joseph's Hospital in the intensive care section. The officers, apparently by prearrangement, told the defendant Jackson that Stevenson had "told us the truth in regards to the fire." In response, Jackson stated that "Yes, he set fire to the house to make money on an insurance deal." Thereupon the defendant Jackson, in the presence of a nurse on duty, was given the warnings dictated by Miranda v. Arizona, *supra*, waived each of the rights, and proceeded to give a

statement implicating himself and defendant Stevenson. The statement suggested that the defendant Stevenson was the originator of the scheme. Substantial details were obtained from Jackson, including the source of the gasoline and the plastic container used by the defendants.

Counsel for the defendant, at a pretrial motion to suppress, objected to the admissibility of the statement based on the involuntariness of the statement under Jackson v. Denno, 378 U. S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908, and the failure to give the Miranda warnings prior to any questioning. At trial, defense counsel objected on behalf of defendant Stevenson citing Bruton v. United States, 391 U. S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476. All objections were overruled.

After completing the interview with Jackson, the officers returned to the University Hospital and contacted Stevenson. He was immediately given the Miranda warnings and informed of the Jackson statement. Stevenson admitted participation in the setting of the fire, generally confirming the opinion of the arson investigator as to the method of setting the fire and the consequences to the arsonists. The only significant difference in the statement was that it was Jackson who was the active partner, that he had "taken the deal over."

Defendants assign as error: (1) Admission into evidence of the confessions made by the defendants to police; (2) failure to instruct on the Miranda issues presented by the evidence; and (3) overruling the defense objection to consolidation of the defendants' cases for trial.

Neither of the defendants Stevenson nor Jackson were in custody at the time the police and fire department arson investigator questioned them on any of the occasions. It is true that after the interrogation of Jackson at St. Joseph's Hospital suspicion was then focused on Stevenson; however, it is well to

note that in the case of Stevenson, when the suspicion was focused on him, prior to the taking of any statement, the Miranda warnings were given. This part of the objection is without merit.

The important thrust of the defendants' argument concerns the circumstances under which the statements were taken. The defendants were each patients in the intensive care units of hospitals. Statements were taken less than 48 hours from the time of severe burn injuries covering 50 to 75 percent of their bodies. The defendants were under medication and were in pain. There was an indication that one of the defendants was subjected to more pain than the other by reason of the fact that the morphine used to control the pain was ineffective due to the defendant's suspected heroin withdrawal. The State produced the officers who testified that they were given permission to talk to the defendants, that each of the defendants, although appearing to be in pain, answered coherently, recognized them, and appeared to be under no compulsion.

The evidence as to the defendants' treatment and physical condition was introduced by the State as part of the total circumstances surrounding the taking of the statements. Although reference is made in the defendants' arguments to the physical condition and the ability of the defendants to voluntarily respond, none of the attending physicians or nurses who were on duty at or during the time of the defendants' hospitalization in the critical period were called as witnesses. The court, at a hearing to determine voluntariness, in accord with Jackson v. Denno, *supra*, determined that the admissions were the product of rational intellects and free will. See State v. Longmore, 178 Neb. 509, 134 N. W. 2d 66. The court further determined that the Miranda warnings were given. The evidence shows conclusively that the Miranda warnings were given even though, as

stated above, under strict construction of the rule, the warnings were not required.

The defendants further complain that the police used fraud and trickery to induce Jackson to confess, implicating the defendant Stevenson and that the Stevenson admissions were a fruit of the impermissible fraud or trickery. The general rule is that police deception is not sufficient to make an otherwise valid confession inadmissible, unless it is such as to produce a false or untrustworthy confession. See, Frazier v. Cupp, 394 U. S. 731, 89 S. Ct. 1420, 22 L. Ed. 2d 684; McIntosh v. State, 105 Neb. 328, 180 N. W. 573. The investigators simply told Jackson that Stevenson had told them the truth about the origin of the fire. There is no evidence of any threats or coercion and no evidence whatever that the form of the deception suggested the answer. The trial court was correct in concluding that the deception did not render the confession inadmissible. Defendants' first assignment of error is without merit.

The contention of the defendants that the trial court was required to submit to the jury the determination whether the Miranda warnings were in fact given to the defendants is without merit. This court determined in State v. Scott, *ante* p. 265, 263 N. W. 2d 659, that it was not error for the trial court to refuse to give NJI No. 14.52A, concerning the giving of the Miranda warnings, which was the instruction requested by the defendants.

Defendants' third assignment of error presents a more difficult situation. A short history of the proceedings in this matter will be helpful. The defendants, at the first stages of their proceedings, were represented by a private attorney with whom they had some disagreement and the court permitted that defense counsel to withdraw prior to any proceedings in the District Court. Thereafter, two members from the staff of the public defender's office of Douglas County, Nebraska, were appointed, one for

each of the defendants. There were several delays in setting trial, and both members of the public defender's staff appeared at all subsequent proceedings up to trial. However, within 1 week of the scheduled date for trial, one of the defense lawyers was hospitalized. The trial court appointed the remaining lawyer to inquire of the defendant Stevenson whether he would object to the assistant public defender representing him, as well as the defendant Jackson. There is no mention in the record of defendant Stevenson's response. At all times in the proceedings, the defendants had objected to the consolidation of the two cases for trial. The deputy county attorney successfully resisted the attempt to sever, arguing to the court that the purpose of the State in prosecuting the cases together was that the defendants' confessions *would tend to corroborate each other.* This occurred in spite of the fact that the deputy county attorney well knew, and the court appropriately instructed at trial, that the admissions of each defendant were to be considered evidence only as against that defendant and not as against his codefendant.

At trial, the confessions of each of the defendants were admitted in evidence. Each of the defendants then took the stand and repudiated his confession. There was no inquiry by the assistant public defender of either of the defendants as to the differences, although minor, between those statements, the motives for confessing, or the differences that each attached in relative blame for the incident to the other.

Defendants rely on Bruton v. United States, *supra.* In Bruton it was held that admission of a codefendant's confession which implicated defendant at joint trial constituted prejudicial error even though trial court gave instruction that the confession could only be used against codefendant and must be disregarded with respect to defendant. There the code-

fendant did not take the stand; thus, the defendant was foreclosed from his constitutional right to confront witnesses against him. This is not a situation as existed in Bruton v. United States, *supra*, as here there was a full opportunity for defense counsel to examine each confessing defendant. The difficulty of this case is not in the lack of an opportunity for defense counsel to confront his clients' accusor, but in the fact he was the attorney for two codefendants, each of whom was accusing his other client. In State v. Montgomery, 182 Neb. 737, 157 N. W. 2d 196, the assistant public defender was representing both the appellant Montgomery and a codefendant Foster on a charge of robbery. Montgomery's codefendant Foster gave a statement which was offered and received in evidence. The confession, which was inculpatory in nature, placed the entire responsibility on his codefendant Montgomery. The court observed in that case that: "There is some danger of prejudice in any trial involving multiple defendants, but severance should be denied in the absence of a showing of prejudice against which the trial court will not be able to afford protection. State v. Brown, 174 Neb. 387, 118 N. W. 2d 328."

In State v. Montgomery, *supra*, this court does suggest that there was an attempted retraction by Foster. "It is true Foster did not testify against appellant, but Foster's statement was admitted into evidence and appellant's attorney, who was also Foster's attorney, could not effectively examine Foster about it without prejudicing appellant's rights. As a result, appellant's counsel is rendered impotent on the most damaging evidence presented in the trial. By this conflict, appellant was denied effective assistance of counsel. Counsel, recognizing the problem, before its offer moved to strike all reference to appellant from the statement, or in the alternative to grant a severance. This motion should have been sustained."

The State attempts to distinguish State v. Montgomery, *supra*, by the suggestion that since both parties have confessed and implicated the other that the case is distinguishable from State v. Montgomery, *supra*. In the case of a joint trial, it is well to remember that the confession of a codefendant is not admissible against the defendant. While we are not prepared to state in what manner an attorney, if separate attorneys had represented each of the defendants, could have or may have attacked the separate confessions of his fellow codefendant, we are equally unprepared to suggest that no such attack was possible. As stated in State v. Montgomery, *supra*: " 'If, in the representation of more than one defendant, a conflict of interest arises, the mere existence of such a conflict vitiates the proceedings, even though no actual harm results.' " See, also, Commonwealth ex rel. Whitling v. Russell, 406 Pa. 45, 176 A. 2d 641.

The United States Supreme Court very recently addressed the issue of representation of two or more defendants by a single defense attorney in a consolidated trial. Holloway v. Arkansas, (46 U. S. L. W. 4289, April 3, 1978). In Holloway, three defendants, represented by a single defense attorney, were tried together despite the protests of the attorney. Prior to trial, the defense attorney moved the court for appointment of separate counsel "on the grounds that one or two of the defendants may testify and, if they do, then I will not be able to cross-examine them because I have received confidential information from them." The motion was denied and the defendants subsequently convicted. On appeal, the Arkansas Supreme Court, in affirming the conviction, held that reversible error can only occur in the single representation of codefendants when the record shows some material basis for an alleged conflict of interest.

Mr. Chief Justice Burger, writing for the majority

in Holloway, held that the trial judge's failure either to appoint separate counsel or to take adequate steps to ascertain whether the risk of a conflict of interests was too remote to warrant separate counsel deprived the defendants of the guarantee of "assistance of counsel" under the Sixth Amendment. Relying on Glasser v. United States, 315 U. S. 60, 62 S. Ct. 457, 86 L. Ed. 680, the court also held that whenever a trial court improperly requires joint representation, over timely objection, reversal is automatic, and prejudice is presumed regardless of whether it was independently shown.

We are not prepared to state that it would have been appropriate, in any circumstances, for the public defender's office to represent the two defendants, even if they were represented by two separate attorneys on the staff of the public defender's office. We hold that the representation of two codefendants in a joint trial where the confession of each was introduced into evidence and the confessions implicated the other raises a conflict of interest on behalf of the attorney. The trial court which ordered the attorney to represent the two codefendants abused its discretion in so ordering and refusing to order a severance.

Other errors assigned in the case were examined and found to be without merit.

REVERSED AND REMANDED FOR NEW TRIAL.

SPENCER, J., dissenting.

I respectfully dissent from the majority opinion herein. These cases are not controlled by State v. Montgomery, 182 Neb. 737, 157 N. W. 2d 196 (1968). In that case there was prejudice in not granting a separate trial. Here there was not. Here, both defendants repudiated their confessions. To suggest that separate attorneys would have cross-examined either defendant about his confession other than to attempt to sustain his repudiation is absurd. There is no question that both of the defendants were together. No competent attorney defending one of

them would attempt to prove that the other committed the crime while his client watched.

Both defendants were interested in repudiating their confessions. This their counsel attempted to do: Bruton v. United States, 391 U. S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476, is not applicable because the defendants were subject to cross-examination, although, as suggested, there would be no cross-examination on the confession.

Defendants objected to a joint trial, not to joint representation by the same attorney. This case is not controlled by Holloway v. Arkansas, 46 U. S. L. W. 4289. That case specifically involved a request for separate counsel. The evil the court addressed was joint representation by one counsel of conflicting interests. There, the attorney objected to joint representation by court appointment of three defendants because of possible prejudice. Here, Jackson's attorney, when Stevenson's attorney became ill, was requested to visit with Stevenson to see if Stevenson wished Jackson's attorney to represent him also. Stevenson had an opportunity to object to this representation. No objection was made. Here, the attorney, who was requested to ascertain whether ot not a conflict of interest existed, did not suggest one. Further, no motion for severance was made after the public defender was asked to represent both defendants.

Mr. Justice Powell, in Holloway v. Arkansas, *supra*, said: ''While disavowing a per se rule of separate representation, the Court holds today that the trial judge's failure in this case 'either to appoint separate counsel or take adequate steps to ascertain whether the risk was too remote to warrant separate counsel' worked a violation of the guarantee of 'assistance of counsel' embodied in the Sixth and Fourteenth Amendments.''

In this case, however, the trial court provided an opportunity to ascertain whether or not a conflict of

interest existed.  None was shown.  Further, there is nothing in the record in the trial of this case which would indicate that the rights of either defendant were prejudiced by the joint representation.  In the absence of an objection to a joint trial, in the absence of defendant Stevenson's objection to his representation by Jackson's attorney, the majority opinion gratuitously gives a new trial to two obviously guilty arsonists.