STATE OF NEBRASKA, APPELLANT, v. BOBBY L. HAYWOOD, APPELLEE.

439 N.W.2d 511

Filed May 5, 1989. No. 89-121.

Ronald L. Staskiewicz, Douglas County Attorney, and Robert C. Sigler for appellant.

Marc B. Delman for appellee.

FAHRNBRUCH, J.

The State of Nebraska appeals from a Douglas County District Court order suppressing statements made by Bobby L. Haywood to Omaha police officers during a custodial interrogation. A review hearing was held before a single judge of this court pursuant to Neb. Rev. Stat. § 29-116 (Reissue 1985). The suppression order is reversed.

Haywood was charged with unlawful possession of a

controlled substance with intent to deliver. The defendant filed a motion to suppress statements he made to police officers while being interrogated after his arrest. After a suppression hearing, the trial judge ruled that Haywood's statement to police "was not voluntary and the result of promises, coercion and untruthful statements of the police. Further, the court finds that the statements given to the second police officer to interrogate the defendant fails [sic] for the reason that the defendant did waive [sic] his Miranda rights." I assume, as do both parties, that the trial judge intended to find that the defendant *did not* waive his *Miranda* rights prior to being interrogated by the second officer.

The State assigns two errors: (1) that the district court erred in concluding that Haywood's statement to police was not voluntarily given, and (2) that the district court erred in its apparent finding that police officers were required to reissue *Miranda* rights before Haywood was interrogated by a second officer.

The State bears the burden in a suppression hearing to show by a preponderance of the evidence that the defendant's statements were voluntary and, therefore, admissible. To be admissible the statements must have been given freely, voluntarily, and without promises or inducements on the part of the State. Voluntariness will be tested by the totality of the circumstances, and the finding of the trial court will not be set aside unless clearly wrong. *State v. Dickson*, 224 Neb. 136, 395 N.W.2d 770 (1986); *State v. Norfolk*, 221 Neb. 810, 381 N.W.2d 120 (1986); *State v. Irwin*, 191 Neb. 169, 214 N.W.2d 595 (1974). See, also, *State v. Sutton*, 231 Neb. 30, 434 N.W.2d 689 (1989).

At approximately 4 p.m. on October 26, 1988, police officers saw the defendant and four other persons on the porch of an apartment building at 1920 North 30th Street in Omaha, Nebraska. The building is one of several owned by the Omaha Housing Authority (OHA) and commonly known as "the projects." Citizens and OHA had asked the police to crack down on gang problems and narcotics activity in that area. Two weeks before this incident, a citizen had informed police that "crack cocaine" was being sold on the front step of 1920 North

30th Street.

Officer Daniel Clark, one of the arresting officers, testified that he recognized four of the parties on the apartment building porch, including the defendant. Clark also stated that three of the individuals, again including the defendant, had admitted to being members of a Los Angeles-based gang known as the "Crips." According to the officer's testimony, this gang deals in violence and drugs.

While approaching the group on the porch, Officer Clark observed a plastic package containing a white powdery substance on a cement area near the porch and about 2 feet from the individuals. On the porch, the officer found a plastic bag containing 11 "rocks" of suspected crack cocaine. This bag was approximately $2^{1}/_{2}$ to 3 feet immediately below the defendant, who was seated on the porch wall. All five parties were arrested and transported to the Central Police Station.

At the station, the five suspects were separated for individual interrogation by narcotics officers. Officer Dennis Clark questioned the defendant. Prior to beginning the interrogation, this Officer Clark read the defendant his constitutional rights as required by the U.S. Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). After Haywood waived his rights, the officer placed a chemical called cobalt thiasufinade on the defendant's hands. This chemical reacts with cocaine residue by turning blue. It is used by the Omaha Police Division as a field test for the presence of cocaine. Officer Dennis Clark testified that the chemical also reacts with other substances and can turn blue as it dries. The cobalt thiasufinade did turn blue when placed on Haywood's hands.

After the chemical test, Officer Dennis Clark began questioning the defendant. Haywood denied any involvement with the cocaine found at the time of his arrest. As the interrogation continued, the officer pointed out conflicts in Haywood's answers. Each time, Haywood changed his version of the facts. As officers questioned the five suspects, the officers maintained contact with each other and relayed the responses being given by each suspect. When told of conflicts between the others' statements and his, Haywood again

changed his story. However, he continued to maintain that the cocaine was not his.

Eventually, Dennis Clark obtained the assistance of another narcotics officer, Mark Sundermeier. At the request of Clark, Sundermeier entered the interrogation room and informed Clark that Haywood's fingerprints had been found on the bag confiscated from the porch. Both officers testified that this was not true, but was an artifice designed to elicit an accurate response from Haywood. After being told his fingerprints were on the bag, Haywood admitted that he had held the bag at one time that afternoon. He remained adamant in his statement that the cocaine was not his and that he had held the bag for a friend named Mike.

When Officer Sundermeier finished questioning the suspect he had been assigned, he returned to assist Officer Dennis Clark. Clark was needed for another segment of the investigation and left the room for a few minutes. Before leaving, Clark told Sundermeier what Haywood had said. Haywood indicated that Clark's version was correct. The interrogation continued with Officer Sundermeier questioning Haywood. Officer Clark returned after 5 to 10 minutes, and Haywood was booked.

The first assigned error is the district court's finding that Haywood's statements to police officers were not given voluntarily. The State argues that the court's finding that the statements resulted from promises, coercion, and untruthful statements by police is clearly wrong. At oral arguments, both parties stated, and the record reflects, that no promises were made to Haywood by any police officer. Accordingly, that portion of the district court's finding, that Haywood's statements resulted from promises, is clearly wrong and must be reversed. The district court's ruling that Haywood's statements were involuntary because of coercion and untruthful statements is also clearly wrong.

A statement must be suppressed if it is obtained by offensive police practices or is obtained under circumstances in which the free choice of the defendant was significantly impaired. See *State v. Dickson*, 224 Neb. 136, 395 N.W.2d 770 (1986). The defendant asserts that two offensive police practices were used

in his interrogation: (1) the cobalt thiasufinade chemical test and (2) the fingerprint artifice. Haywood argues that these tactics are so coercive as to render his statements to the police officers involuntary.

The cobalt thiasufinade was placed on Haywood's hands immediately after he waived his *Miranda* rights. Officer Dennis Clark testified that the test is used by narcotics officers in the field to determine whether cocaine residue is present. Clark himself had been using the chemical for about 3 years. While the chemical may eventually react with substances other than cocaine, if cocaine is present the reaction happens quickly.

The officer testified that he used the chemical on Haywood because there were five parties who could have possessed the cocaine. It was possible that Haywood had possessed the cocaine and that there was residue on his hands. When asked if he used the chemical to trick Haywood into admitting possession of the cocaine, Officer Clark responded in the negative.

The defendant asserts that use of the test was coercive because cocaine residue on his hands was only a "possible fact situation." Haywood argues that Officer Clark was only interested in possibilities and not in the truth. This argument is not supported by any evidence in the record. The plain fact is that two bags of cocaine were found in the vicinity of five individuals. It was incumbent upon the police to determine which, if any, of those individuals should be charged with possession of the cocaine. Officer Clark testified that he was using an approved method for determining whether one of those individuals, Haywood, could have possessed the cocaine. This was his job.

The record shows no indication of improper use of the chemical or of improper motive on the part of Officer Dennis Clark. And there is no evidence to suggest that the chemical did not react quickly. Finally, even after his hands turned blue, Haywood denied any involvement with cocaine. The chemical test obviously did not coerce Haywood into making any incriminating statements. The State met its burden of proving by a preponderance of the evidence that Officer Dennis Clark's use of cobalt thiasufinade on defendant Haywood's hands was

not an offensive police practice and was not coercive.

Haywood also argues that he was coerced by the officer's untrue statement that his fingerprints were on the bag containing crack cocaine. While the artifice set up by Officers Clark and Sundermeier is clearly deceptive, it is not necessarily an offensive police practice. The test for determining admissibility of a statement obtained by police deception is whether that deception produced a false or untrustworthy confession or statement. *State v. Norfolk*, 221 Neb. 810, 381 N.W.2d 120 (1986); *State v. Stevenson & Jackson*, 200 Neb. 624, 264 N.W.2d 848 (1978).

Haywood again asserts that Officer Dennis Clark was interested in obtaining a desired response to a possible fact situation rather than in obtaining the truth. The fingerprint ruse was used only after Haywood changed his story numerous times. These changes were the result of his being confronted with conflicts in his story and in his version of the facts compared with those of the others. The only "fact situations" Clark had to work with were those being given him by Haywood and by the other questioning officers. Haywood's story could be nothing more than a possibility since it was continually changing. Both Officer Clark and Officer Sundermeier testified that their goal was to obtain the truth. There is no evidence to contradict these assertions.

After being told his fingerprints were on the bag, Haywood stated that he had held the bag for a friend. It is important to note that Haywood maintained this version of the facts throughout the rest of his interrogation by both officers. The preponderance of the evidence indicates that the use of the fingerprint artifice did not result in a false or untrustworthy statement. Under the totality of the circumstances, police officers' untruthfully telling Haywood his fingerprints were on the bag of crack cocaine was not an offensive police practice and was not coercive. See, *Finke v. State*, 56 Md. App. 450, 468 A.2d 353 (1983) (finding that police lies to defendant, including that his fingerprints were recovered at crime scene, did not render defendant's statements involuntary); *State v. Winters*, 27 Ariz. App. 508, 556 P.2d 809 (1976) (finding that defendant's incriminating statements were not inadmissible on grounds that

police coerced defendant by untruthfully telling him his fingerprints were found at crime scene); *Sovalik v. State*, 612 P.2d 1003 (Alaska 1980) (finding that untruthfully telling defendant his fingerprint was found at crime scene was not coercive and did not have a tendency to produce an untruthful statement).

Neither the cobalt thiasufinade chemical test nor the fingerprint artifice was an offensive police practice requiring suppression of Haywood's statements to police.

Next considered is whether Haywood's statements were made under circumstances in which his free choice was significantly impaired. In other words, was the situation such that an innocent defendant would be induced to incriminate himself? I find that it was not.

Both Sundermeier and Dennis Clark testified that Haywood was not under the influence of drugs or alcohol while being interrogated. He understood their questions and responded coherently. Haywood did not complain of his physical or mental well-being. The officers made no promises or threats; Haywood was not beaten or otherwise physically abused; and there is nothing in the record to indicate that the officers tried to work on the defendant's emotions or feelings of guilt.

Haywood presented no evidence in his own behalf. There is nothing to contradict any of the officers' testimony regarding the circumstances of Haywood's interrogation, and the record gives no indications of improper inducement by the officers.

The preponderance of the evidence does not show circumstances in which an innocent defendant was induced to incriminate himself. Haywood's free choice was not impaired. The district court's finding that Haywood's statements to police officers are involuntary because they are the result of coercion and untruthful statements by police is clearly wrong and is reversed.

The State's last assigned error is that the trial court erred in its apparent finding that police officers were required to reissue *Miranda* rights before Haywood was interrogated by Officer Sundermeier. As stated above, the record clearly shows that Haywood was advised of his *Miranda* rights and that he waived those rights before being questioned by Officer Dennis Clark.

The defendant has not claimed that he did not waive his *Miranda* rights freely, voluntarily, knowingly, and intelligently. The *Miranda* warnings were not given a second time before Officer Sundermeier questioned Haywood during Clark's absence from the room. The trial court apparently found that Sundermeier was required to give Haywood his rights again before taking over for Clark. If so, this finding is erroneous.

In *Stumes v. Solem*, 752 F.2d 317 (8th Cir. 1985), plaintiff was questioned by police officers after waiving his *Miranda* rights. Five hours after the interrogation ended, officers resumed questioning the plaintiff without reissuing the *Miranda* warnings. The U.S. Court of Appeals for the Eight Circuit held that *Miranda* warnings were unnecessary prior to the resumption of interrogation. The court reasoned that the plaintiff was aware of his rights and voluntarily chose not to exercise them. "To require the police to reissue *Miranda* rights under these circumstances would serve no real purpose." 752 F.2d at 321. See, also, *Wyrick v. Fields*, 459 U.S. 42, 103 S. Ct. 394, 74 L. Ed. 2d 214 (1982).

Questioning of Haywood, by both officers, lasted a total of 1 1/2 hours. When Clark left the room, Sundermeier continued the interrogation until Clark returned a few moments later. No purpose would be served by requiring Sundermeier to reissue *Miranda* rights to Haywood before continuing the interrogation. The finding by the district court in this regard is clearly wrong and is reversed.

The district court's rulings that Haywood's statements to Omaha police officers were involuntary and that the police were required to reissue *Miranda* warnings before a second officer could continue the interrogation are clearly wrong and are reversed.

REVERSED.