STATE OF NEBRASKA, APPELLEE, V.
KENNETH T. BISHOP, APPELLANT.
STATE OF NEBRASKA, APPELLEE, V.
LARRY E. DAVIS, APPELLANT.
STATE OF NEBRASKA, APPELLEE, V.
DARRELL R. YATES, APPELLANT.

295 N.W.2d 698

Filed August 8, 1980. Nos. 43035, 43036, and 43037.

John P. Grant for appellant Bishop.

Larry E. Davis, pro se.

James R. Sacoman of Seminara, Caniglia, Turco, McCarthy & Sacoman for appellant Yates.

Paul L. Douglas, Attorney General, and Jerold V. Fennell for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

HASTINGS, J.

Defendants appeal the order of the District Court for Douglas County, Nebraska, which denied each of their motions for post conviction relief. We affirm.

In connection with armed robberies occurring at two different locations in Omaha on December 15, 1975, each defendant was charged with five counts of robbery and five counts of the use of a firearm in the commission of a felony. Additionally, the defendant Yates was charged with one count of shooting with intent to kill, wound, or maim. All three cases were consolidated for trial and one attorney from the Douglas County public defender's office was appointed to represent all three defendants.

Subsequent to the filing of the information, the attorney representing the defendants filed motions for severance of the defendants and for separate trials on the counts referring to incidents occurring at different locations. The transcript indicates that all motions were heard and overruled and that the three cases were ordered consolidated for trial. There is no record of the details of the hearing itself. The cases proceeded to trial to a jury on March 3, 1976, and testimony was adduced by the State through March 4, 1976. On March 5, 1976, the defendants' attorney advised the court that a plea bargain had been made, and thereafter all three defendants pleaded guilty to two counts of robbery and one count of the use of a firearm in the commission of a felony. The remaining counts were dismissed. Each defendant received a sentence of 5 to 8 years on the two robbery counts, to run concurrently, and a sentence of 3 to 5 years on the remaining count, to run consecutively to the sentences for robbery.

Each defendant filed, pro se, an identical motion for new trial, alleging insufficiency of the evidence, incompetency of counsel, and excessiveness of sentence, all of which were overruled. Only Yates appealed and his case was affirmed by this court on December 9, 1976, under Neb. Ct. R. 20-A. On December 27, 1978, identical motions to vacate judgment were filed by all of the defendants, pursuant to Neb. Rev. Stat. § 29-3001 (Reissue 1979). The basis of their claim for post conviction relief was the alleged denial of assistance of counsel as guaranteed by the sixth amendment to the United States Constitution. After an evidentiary hearing, the District Court denied the relief sought.

The evidence at the post conviction hearing consisted of the testimony of the three defendants, that of the assistant public defender who had represented them at the trial, and the complete record of the prior proceedings up to and including the sentencing hearing.

In explaining the circumstances which prompted him to reopen negotiations for a plea bargain after 2 days of trial, the assistant public defender said: "I thought the evidence was overwhelming. I thought we were being buried. I couldn't see any daylight." Therefore, he did undertake to negotiate a plea bargain with the prosecuting attorney and "pressured" his clients into entering the pleas of guilty, believing that this was in their best interest rather than be convicted on all counts against them, a fate he then believed to be inevitable.

"Q. And for what reason did you pressure them to plead guilty?

"A. Well, from the beginning they were consistently demanding of me that they have a trial. And there were various discussions from the beginning until the end of plea bargain arrangements, negotiated settlements, and none of them were acceptable to the defendants. So at the point in time where the trial was nearly completed; that is to say, that the State's case was nearly finished, I was convinced that there were going to be convictions all the way around."

In reply to a question as to the nature and circumstances of the pressure that was applied, the defense attorney stated: "One of my three clients was not going to plead guilty to anything, and the Court would not allow us to strike separate plea bargains, nor would the State's attorney go along with that. All three were required to enter into the same plea bargain or else there was to be no plea bargain. In other words, the one holdout had to join the other two, or else we would not be able to negotiate a settlement to the lawsuit. Therefore, there was pressure brought to bear on that one man, and it was brought to bear by me and it was also brought to bear by my other two clients."

At another point in his testimony, when asked if he felt there had been pressure applied to the defendants to enter their pleas, the deputy public defender replied: "Absolutely. I don't think a criminal defendant ever entered a plea of guilty without some kind of pressure on him."

When asked if he felt that the defendants were subjected to duress, he replied that there was pressure, and then the following exchange took place between him and the attorney representing the defendant Davis:

"Q. Do you feel that there was a fear in them at all at the time that they entered the plea, other than the fear of going to the penitentiary?

"A. No, we were all afraid that we were going to be convicted on all counts. That is a definite pressure. If there is — if there was any duress, I am not aware of it. Definitely pressure. No to the duress would be my answer."

Each of the defendants testified at the post conviction hearing that they had verbal struggles and physical struggles among themselves during the pendency of the trial. Bishop testified: "We have asked for severance, particularly not wanting to go to trial with Yates, because of the fact — or the allegations, you know, that Yates supposedly had robbed this place, and if it was so that it was that he did rob this place, myself and Davis

didn't want to be burdened with a robbery that he supposedly had committed, if he had committed it. We felt to ourselves that it would have been in our best interests to get the trial separated."

Yates testified similarly: "I didn't have nothing in common with the fellows that evening, and I felt that I should — I should have had my own counsel, you know. At the time of court he couldn't concentrate on my best interest, you know, my counsel was weak at that time, which I tried to get him to get me another counsel or postpone court several times because I felt that at that time my defense was weak. And he was — it was very obvious to him, because I told him several times. Which he brought it up, but nobody wouldn't see it."

Davis testified that he and Bishop were together in an apartment at the time of arrest and that they had simply been put together with Yates at the police station. He stated that the three had some light physical struggles because: "That we didn't have nothing against Yates to say that he done it or didn't do it, and we didn't want to be going to court with him."

All three defendants testified that they had always wanted a complete jury trial, and the only reason they finally agreed to plead guilty to reduced counts was because "all during trial our attorney was constantly telling us it would be in our best interest to try to make a plea bargain, because there is no way that I can win this trial for you." According to Bishop: "What I understood about it, and what our attorney told us, that it is to the point right now where guilt or innocence doesn't make any difference, the main thing to do right now is try to make a plea for as least time as possible, because you are going to get convicted. He said there is nothing I can do, I couldn't even properly represent you, so your best bet now is to make a deal, that is the best I can do for you. He said if you don't make a deal, then you are going to get fifty, sixty years, et cetera. So we were left hanging like that. Then with that impression, which he said he could possibly get three-year sentences for us, I made the deal."

Further testimony of the assistant public defender relates to the matter of accepting the plea bargain, as follows: "I think they were becoming as receptive as I was to the plea bargain offer because they, too, were impressed with the testimony of the State's witnesses. ... All four of us are at the same spot looking at the same evidence, and I think they realized that we needed to take another look at this. They were helpful, they were listening. They were not volunteering. I was in the position of having to convince them about a negotiated settlement."

The primary contention of all three defendants upon appeal is that their constitutionally-protected rights to effective assistance of counsel were denied when their court-appointed attorney was directed to contemporaneously represent the interests of all three codefendants. The contention is that the joint representation, with its conflicts of interest, resulted in inadequate representation for each man.

According to their testimony, they were each under the impression that a motion for appointment of separate counsel had been submitted and denied by the trial court. The record, however, reveals only the filing of motions to sever and for separate trials, as previously indicated. Unfortunately, there is nothing in the record from which we can determine just what was said at the hearings on those motions. There is simply a hint of the general discussion found in a colloquy between the court and the assistant public defender at the post conviction hearing:

"The Court: ... [I]n connection with the motions to sever the cases and give individual trials, you recall those motions, I think they were all heard on one day. The Court's decision was based on the question of lack of prejudice, you couldn't prove that they would be prejudiced by being joined together; that's correct, isn't it?

"A. Yes.

"The Court: In other words, these defendants had told you all the time, as I understood it, if I remember cor-

rectly, that they were not guilty, and so there wouldn't be any conflict as far as the guilt is concerned; am I correct in my assumption?

"A. Yes."

This court stated in *State v. Stevenson & Jackson*, 200 Neb. 624, 264 N.W.2d 848 (1978), that if a conflict of interest arises in the representation of more than one defendant, the mere existence of such conflict raises a presumption of prejudice and reversal is automatic. In that case, one attorney represented two codefendants in a joint trial. The confession of each defendant was introduced into evidence and each confession implicated the other codefendant. We held that a conflict of interest on behalf of the attorney arose. In the instant case, no facts such as those appear in the record.

Relied upon to some extent in *Stevenson & Jackson, supra*, was *Glasser v. United States*, 315 U.S. 60 (1942), in which the United States Supreme Court stated: "'[A]ssistance of counsel' guaranteed by the Sixth Amendment contemplates that such assistance be untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests." *Id.* at 70. In *Glasser*, the lawyer representing codefendants failed to cross-examine two witnesses. An inference could be drawn that such decision to forego cross-examination was influenced by a desire to protect one of the codefendants to the prejudice of the other. Additionally, there was certain testimony received without objection which conceivably could have been favorable to one codefendant and prejudicial to the other. No similar fact situation existed here.

The United States Supreme Court further has held that a defendant is denied effective assistance of counsel whenever a trial court improperly requires joint representation over timely objections which are supported by representations which focus explicitly on the probable risk of a conflict of interest. *Holloway v. Arkansas*, 435 U.S. 475 (1978). That case also held that permitting or requiring a single attorney to represent

codefendants is not per se violative of the right to effective assistance of counsel, but the Court refused to adopt a rule requiring a defendant to show that a conflict of interest prejudiced him in some specific fashion. However, in *Holloway*, during pretrial proceedings, the attorney representing the codefendants advised the trial judge of the possibility of conflict, which was amplified by his assertion that "'one or two of the defendants may testify and, if they do, then I will not be able to cross-examine them because I have received confidential information from them.'" The trial judge responded, "'I don't know why you wouldn't.'" *Id.* at 478. When that exact situation arose during trial, the attorney observed to the court that he was in a position where he was unable to cross-examine the one defendant on behalf of the others. To this, the trial judge replied: "'You have no right to cross-examine your own witness.'" *Id.* at 479. In the instant case, no such situation was presented to the trial judge, nor did it develop during trial.

The most recent pronouncement on this point by the United States Supreme Court is in *Cuyler v. Sullivan*, 100 S. Ct. 1708 (1980). In that case, the same two lawyers represented the defendant and two others, who, however, were tried at separate trials. The defendant Sullivan was the first to be tried, and the defense rested at the close of the prosecution's case and the defendant was convicted. The two lawyers gave conflicting accounts of the decision to rest Sullivan's case. One lawyer said that he had encouraged the defendant to testify because the prosecution had presented a very weak case. His cocounsel remembered that it was his desire that no defense be presented because it would only be exposing the defense witnesses for the other two trials. After reviewing the opinions from *Glasser v. United States, supra,* and *Holloway v. Arkansas, supra,* the Court said: "The Court of Appeals granted Sullivan relief because he had shown that the multiple representation in this case involved a possible conflict of interest. We hold that the possibility of conflict is insufficient to impugn a crimi-

nal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler* at 1719.

In summary, the complaints made by the defendants as to conflict of interest are the same as are advanced against consolidation of cases for trial, i.e., guilt by association, or exerted pressure by counsel and codefendants to accept an "all or none" plea bargain. There is no indication, nor complaint made, that the defendants' single counsel was hampered at sentencing in presenting the defendants in their most favorable light.

At the time of accepting the pleas of guilty, Judge Tesar fully, meticulously, and scrupulously protected their rights by full inquiry into all of the required areas of accepting a guilty plea. He ascertained that the defendants knew with what they were charged; that they were entitled to continue with the jury trial; and that they understood the burden of proof, presumption of innocence, right of compulsory process, right of cross-examination, right against self-incrimination, and the necessity of a unanimous verdict. He fully explained the consequences of their guilty plea, i.e., the possible sentences. The trial judge was assured by the defendants that no force, threats, or coercion had been practiced against them to produce the guilty pleas, and on several occasions impressed upon them that a plea of guilty was an admission of guilt and that he would not accept the pleas if they were not guilty of the charges. The defendants all assured the court that, in their opinion, they had had good advice and effective counsel.

It is quite apparent that the defendants pleaded guilty not because their attorney probably could not get them acquitted due to any conflict of interest, but because of the overwhelming weight of the evidence presented by the State. Perhaps this is best demonstrated by the statement of the assistant public defender, who, in order to furnish the basis of the pleas to the court, stated as follows: "I urged my three clients to stick with the plea of

not guilty because I felt that there were inherent weaknesses in the eyewitness identification testimony of the State's witnesses, but after now having seen most of the State's evidence, including all of the circumstantial evidence, it is now clear to my clients that the circumstantial evidence is, at least, adequate to convict them on all of the counts. That's why we are changing our minds."

Immediately following that statement, the trial judge said to one of the defendants, "That's what I was driving at. In other words, you are telling me that the three offenses that you are pleading guilty to you committed, is that correct . . . ?" That question was addressed to each defendant separately and drew an affirmative reply from each.

Finally, the following testimony was given by the assistant public defender during the post conviction proceeding:

"Q. But let's go back, and you say that if you had two other lawyers that things could be different and that you could have represented either Mr. Bishop or Yates or Davis, assuming you would have had your pick. Tell me, sir—

"A. They would have had their pick.

"Q. All right, they would have had their pick, fine, it makes no difference. Tell me, do you think as you are sitting there in that witness chair at this time if there were two other lawyers and the evidence came in like it did on that day, on March 3, 4, and 5 of 1976, do you think that those two other lawyers could have changed this case in any way? In other words, do you think a plea bargain still would have been struck?

"A. I don't think anything would have been any different."

The defendant has the burden of establishing a basis for relief in a post conviction proceeding, and the findings of the District Court in denying such relief will not be disturbed on appeal unless they are clearly erroneous. *State v. Halsey*, 195 Neb. 432, 238 N.W.2d 249 (1976). The defendants have failed to carry their burden

to establish that an actual conflict of interest adversely affected their lawyer's performance in these cases.

The judgment of the District Court is correct and is affirmed.

AFFIRMED.

KRIVOSHA, C.J., dissenting.

I must respectfully dissent from the majority's opinion in this case. I believe that it is, indeed, a better practice to permit each defendant separate counsel, when requested, and whereas in this case it appears that separate counsel was requested and denied, the relief requested here should be granted. As we noted in *State v. Stevenson & Jackson*, 200 Neb. 624, 264 N.W.2d 848 (1978), if a conflict of interest arises in the representation of more than one defendant, the mere existence of such conflict raises a presumption of prejudice and reversal is automatic. I believe here that where not only do the parties allege, but their court-appointed counsel also admits, that there was some conflict and that pressure was brought to bear on the three defendants to enter pleas of guilty, there is sufficient evidence of a conflict of interest. For that reason, I would have granted the relief requested and ordered new trials in these cases.

MCCOWN and WHITE, JJ., join in this dissent.

CLINTON, J., concurring.

I concur in the judgment. The record affirmatively shows that each of the defendants entered a plea of guilty which was intelligently and voluntarily made and it is not contended otherwise. These pleas of guilty waive any constitutional claims re prior ineffective assistance of counsel. A plea of guilty or nolo contendere waives every defense to the charge, procedural, statutory, or constitutional, other than that the information does not state a crime. *State v. Country*, 202 Neb. 509, 276 N.W.2d 110 (1979); *State v. Abramson*, 197 Neb. 135, 247 N.W.2d 59 (1976); *State v. Turner*, 186 Neb. 424, 183 N.W.2d 763 (1971).