Kenneth T. BISHOP, Petitioner,

v.

Robert PARRATT, Warden, Respondent.

Larry Eugene DAVIS, Petitioner,

v.

Robert PARRATT, Warden, Respondent.

Darrell YATES, Petitioner,

v.

Robert PARRATT, Warden, Respondent.

Nos. CV80–L–261 to CV80–L–263.

United States District Court,
D. Nebraska.

March 16, 1981.

---

Robert A. Cannon, Lincoln, Neb., for petitioner Bishop.

Thomas R. Lamb, Lincoln, Neb., for petitioner Davis.

Donald G. Thompson, Lincoln, Neb., for petitioner Yates.

Jerold V. Fennell, Asst. Atty. Gen., Lincoln, Neb., for respondent.

MEMORANDUM OF DECISION

URBOM, Chief Judge.

I.

Nature of the Case

The petitioners seek writs of habeas corpus under 28 U.S.C. § 2254 on the grounds

of denial of effective assistance of counsel in their state criminal trial and that their guilty pleas there were not voluntarily and intelligently made.

## II.

### Facts

The petitioners Bishop and Davis were arrested in December, 1975, at the Drake Court Apartments in Omaha, Nebraska, as suspects in connection with two robberies committed with the use of firearms. The petitioner Yates was arrested that same evening in an alley near the Drake Court Apartments. Each petitioner was later charged with five counts of robbery and five counts of the use of a firearm in the commission of a felony. Additionally, Yates was charged with one count of shooting with intent to kill, wound or maim. All three cases were consolidated and Assistant Douglas County Public Defender William Campbell was appointed to represent all three petitioners.

Each petitioner maintained his innocence, wanted to go to trial, and wanted to testify in his own behalf. Each petitioner expressed to Campbell his desire to have separate counsel and a separate trial. In accordance with these requests and his own feeling that he could better represent the petitioners in separate trials or one of the petitioners alone, rather than all three together, Campbell filed in late January, 1976, a motion for severance of the petitioners on the ground that the risk of prejudice in their joint trial was so great that the petitioners were entitled to separate trials. While no record was made of the hearing on this motion, the transcript indicates that the motion was denied. Campbell also made an oral request, during argument on the motion for severance, for the appointment of separate counsel; that request was also denied.

Trial began in early March, 1976, and after two days of the state's evidence, plea negotiations with the prosecutor were reopened. The prosecutor offered to dismiss all remaining counts, including the shooting charge against Yates, if they would plead guilty to two counts of robbery and one count of the use of a firearm in the commission of a felony. When informed of this offered plea bargain by their counsel, Davis and Yates reluctantly agreed to plead guilty, but Bishop expressed his opposition to the plea bargain and his desire to continue with the trial. When Campbell informed the trial judge that only two of the petitioners wished to plead guilty in accordance with the offered plea bargain, the court instructed Campbell to inform the petitioners that all three would have to agree to the plea bargain or all three would have to continue to trial, represented by Campbell. After much discussion, Campbell and Davis and Yates convinced Bishop to agree to the plea bargain.

The petitioners were then called before the court, informed that they could continue with the trial if they so desired, and questioned as to their satisfaction with their counsel and as to whether there were any promises or threats made to the petitioners to induce them to plead guilty. The petitioners each pleaded guilty and later each was sentenced to a concurrent term of five to eight years on each robbery count and a consecutive term of three to five years on the use of a firearm in the commission of a felony count.

Yates appealed his conviction, which was affirmed by the Supreme Court of Nebraska. Later, all three petitioners filed identical motions for post-conviction relief under §§ 29–3001 et seq., R.R.S.Neb. (Reissue 1979), based on a denial of effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution. Upon a finding that a conflict of interest existed on the part of the public defender, the district court appointed separate counsel to represent the petitioners in their post-conviction proceedings. After an evidentiary hearing, the district court denied the petitioners' post-conviction motions. This denial was affirmed in *State v. Bishop*, 207 Neb. 10, 295 N.W.2d 698 (1980).

The petitioners then filed in this federal court similar petitions for writ of habeas

**1144**

corpus, alleging the following grounds for relief:

I. That their convictions were obtained by use of their guilty pleas which were unlawfully induced and involuntarily made; and

II. That they were denied effective assistance of counsel in that their court-appointed counsel was directed to represent contemporaneously the interests of all three defendants.

This court appointed separate counsel to represent the petitioners and consolidated the cases for hearing and decision. Counsel for the parties have provided the court with the bill of exceptions of the two days of trial, the entering of the guilty pleas and the sentencing in the state trial court and copies of the transcripts of the proceedings in the state courts. Because the bill of exceptions of the petitioners' post-conviction proceedings was lost and because witnesses having information bearing on the constitutional issues raised in the habeas petitions were not called to testify at that hearing, an evidentiary hearing was held before this court on February 19, 1981.

### III.

#### Appropriate Scope of Habeas Review

It must be determined at the outset whether this court, as the respondent contends, is bound under 28 U.S.C. § 2254(d) by the state court's finding that no conflict of interest existed.

 Section 2254(d) provides that "a determination after a hearing on the merits of a factual issue, made by a state court of competent jurisdiction ... [and] evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct," unless the applicant for a federal writ of habeas corpus can establish one of the enumerated exceptions. It is now clear that this provision is applicable not only to factual deter-

minations made by state trial courts, but also those made by state appellate courts, such as the Supreme Court of Nebraska. *Sumner v. Mata*, —— U.S. ——, ——, 101 S.Ct. 764, 767, 66 L.Ed.2d 722 (1981). However, the Supreme Court of Nebraska's holding that no conflict of interest existed in this case, see *State v. Bishop*, 207 Neb. at 19–20, 295 N.W.2d 698, does not fall within this statutory provision, because it is a "mixed determination of law and fact that requires the application of legal principles to the historical facts of this case." *Cuyler v. Sullivan*, 446 U.S. 335, 342, 100 S.Ct. 1708, 1715, 64 L.Ed.2d 333 (1980). Such a determination is open to review on collateral attack in a federal court. *Id.* Furthermore, in this case, where the bill of exceptions of the state post-conviction hearing has been lost and the testimony of witnesses who did not testify at the post-conviction proceeding was presented at the evidentiary hearing before this court, the exception of § 2254(d)(3), providing that this court need not presume the correctness of the state court's factual findings if material facts were not adequately developed at the state court hearing, is appropriate. Also, without the bill of exceptions upon which the Supreme Court of Nebraska based its holding, this court is unable to determine, as it is allowed to do under § 2254(d)(8), whether the factual determinations of the Supreme Court of Nebraska relating to its finding that no conflict existed are fairly supported by the record, unless exploration of the facts is undertaken in this court.

### IV.

#### Waiver

 I turn next to the respondent's contention that by entering a plea of guilty, the petitioners waived the right to challenge the effectiveness of their trial counsel.[1] It is true that once a defendant enters a plea of guilty, he may not thereafter raise independent constitutional deprivations

1. The respondent does not contend, and the evidence would not support a claim, that the petitioners knowingly and intelligently waived their right to effective assistance of counsel, but contends only that they are now precluded from challenging any alleged constitutional deprivations which occurred prior to the entry of the guilty plea.

which occurred before the entry of the guilty plea. He may attack only the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not "within the range of competence demanded of attorneys in criminal cases." *Tollett v. Henderson*, 411 U.S. 258, 266, 267, 93 S.Ct. 1602, 1607, 1608, 36 L.Ed.2d 235 (1973) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970). See, also, *Thundershield v. Solem*, 565 F.2d 1018 (C.A. 8th Cir.), cert. denied, 435 U.S. 954, 98 S.Ct. 1585, 55 L.Ed.2d 805 (1978); *Davis v. Parratt*, 460 F.Supp. 1227, 1229 (U.S.D.C.Neb. 1978).

The petitioners are attacking the voluntary and intelligent character of their guilty pleas on the grounds that the pleas were entered on the basis of advice received from counsel rendered ineffective because of conflict-ridden multiple representation. Such a claim is clearly permitted by the *Tollett* and *McMann* decisions. See *Dukes v. Warden*, 406 U.S. 250, 92 S.Ct. 1551, 32 L.Ed.2d 45 (1972); *McMann v. Richardson*, 397 U.S. at 771, n. 14, 90 S.Ct. at 1449, n.14 (noting that a defendant pleading guilty is entitled to effective assistance of counsel and citing in support *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the seminal case in the area of joint representation of criminal defendants). See, also, *Mone v. Robinson*, 430 F.Supp. 481, 485, n. 6 (U.S.D.C.Conn.), affirmed without opinion, 573 F.2d 1293 (C.A. 2nd Cir. 1977). Furthermore, this court is not restricted to reviewing Campbell's actions only at the time of the plea negotiations and the entry of the guilty pleas, because his representation of the petitioners before that time is relevant to evaluating the advice given by Campbell at the plea negotiating stage. *Tollett v. Henderson*, 411 U.S. at 267, 93 S.Ct. at 1608.

## V.

### Multiple Representation of Criminal Codefendants

As a preface to discussing the petitioners' claims that they were denied effective assistance of counsel, it is necessary to note various principles developed by the Supreme Court of the United States regarding the multiple representation of criminal codefendants.

In 1942 in *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, the Supreme Court held that, while requiring an attorney to represent criminal codefendants is not per se violative of constitutional guarantees of effective assistance of counsel, requiring one attorney to represent the codefendants simultaneously constitutes a denial of the Sixth Amendment right to effective assistance of counsel, if those codefendants have conflicting interests.

" . . . [T]he 'assistance of counsel' guaranteed by the Sixth Amendment contemplates that such assistance be untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests. If the right to the assistance of counsel means less than this, a valued constitutional safeguard is substantially impaired." 315 U.S. at 70, 62 S.Ct. at 464

In recognition of the importance of protecting joint defendants from conflict-ridden representation by one attorney, the Supreme Court in *Holloway v. Arkansas*, 435 U.S. 475, 484, 98 S.Ct. 1173, 1178, 55 L.Ed.2d 426 (1978), held that state trial courts, when faced with timely objections by counsel to multiple representation, must appoint separate counsel or "take adequate steps to ascertain whether the risk [is] too remote to warrant separate counsel." In so holding, the *Holloway* court relied upon the reasoning in *Glasser*:

" 'Upon the trial judge rests the duty of seeing that the trial is conducted with solicitude for the essential rights of the accused. . . . The trial court should protect the right of an accused to have the assistance of counsel. . . .

" 'Of equal importance with the duty of the court to see that an accused has the assistance of counsel is its duty to refrain from embarrassing counsel in the defense of an accused *by insisting, or indeed, even*

suggesting, that counsel undertake to concurrently represent interests which might diverge from those of his first client, when the possibility of that divergence is brought home to the court.' 315 U.S., at 71, 76 [62 S.Ct. at 465, 467] (emphasis added)." 435 U.S. at 484–485, 98 S.Ct. at 1178–1179

Given the trial court's failure to respond to the defense attorney's timely and repeated assertions that the interests of his clients conflicted, the *Holloway* court did not consider whether the alleged conflict actually existed, but simply held that the trial court's error unconstitutionally endangered the right to effective assistance of counsel, 435 U.S. at 483–487, 98 S.Ct. at 1178–1180, and that such an error could never be harmless. 435 U.S. at 487–491, 98 S.Ct. at 1180–1182.

Most recently, the Supreme Court in *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), addressed two issues expressly reserved in *Holloway v. Arkansas*, 435 U.S. at 483–484, 98 S.Ct. at 1178, holding: (1) absent an objection by counsel to multiple representation or special circumstances in which the trial court "knows or reasonably should know that a particular conflict exists," a state trial judge has no duty to inquire into the propriety of multiple representation, and (2) a defendant who raised no objection at trial must demonstrate that an *actual* conflict of interest *adversely affected* his lawyer's performance in order to establish a violation of the Sixth Amendment. The Supreme Court, however, reaffirmed the holding of *Glasser* and *Holloway* that prejudice need not be demonstrated.

 The above principles can be summarized as follows: If timely objection is made to multiple representation and the trial court fails to make adequate response, the petitioners need show only that there was a potentiality for conflicting interests; if no objection is made to the multiple representation and no special circumstances exist requiring the trial court to make its own inquiry into the propriety of the multiple representation, the petitioners must show that an actual conflict of interest adversely affect their lawyer's performance; and, in either case, it is not necessary that the petitioners demonstrate prejudice in order to obtain habeas relief.

 In the cases now before this court the petitioners' counsel, Mr. Campbell, made to the trial judge two requests—one in writing for separate trials, and one orally for separate counsel—on the ground that his three clients had distinctive interests. While it is apparent from the written motion filed by Campbell and from his deposition taken for purposes of the evidentiary hearing held in this court that Campbell did not fully apprehend or fully articulate to the trial court the possibilities for conflicts in the petitioners' interests,[2] this fact did not relieve the trial court of the duty to invoke a meaningful inquiry into the potentialities for conflict. As observed by the Supreme Court in *Holloway*:

" . . . It is arguable, perhaps, that defense counsel might have presented the requests for appointment of separate counsel more vigorously and in greater detail. As to the former, however, the trial court's responses hardly encouraged pursuit of the separate-counsel claim; and as to presenting the basis for that claim in more detail, defense counsel was confronted with a risk of violating by more

---

**2.** Campbell's deposition reveals that Campbell did inform the trial judge that because of his representation of all three petitioners he would be unable to cross-examine adequately the state's identification witnesses concerning the inconsistencies in their testimony without the risk of incriminating one petitioner in favor of another. He did not, however, inform the court trial—and apparently was unaware—of the possible difficulty in cross-examining the petitioners should they carry through with their decisions to testify in their own behalf. Indeed, one of the reasons asserted in support of the motion for severance was that each petitioner would be deprived of the opportunity to cross-examine his codefendants should they exercise their constitutional right *not* to take the witness stand. Campbell also failed to inform the trial court of the difficulty he would have in developing the separate alibi defenses of each petitioner without incriminating the others.

disclosure, his duty of confidentiality to his clients." 435 U.S. at 485, 98 S.Ct. at 1179

No record exists of the hearing on Campbell's motions; however, a colloquy between the trial judge and Campbell at the state post-conviction hearing, quoted by the state supreme court in its opinion, relates the following about that hearing:

"'The Court: ... [I]n connection with the motions to sever the cases and give individual trials, you recall those motions, I think they were all heard on one day. The Court's decision was based on the question of lack of prejudice, you couldn't prove that they would be prejudiced by being joined together; that's correct, isn't it?

'A. Yes.

"'The Court: In other words, these defendants had told you all the time, as I understood it, if I remember correctly, that they were not guilty, and so there wouldn't be any conflict as far as the guilt is concerned; am I correct in my assumption?

'A. Yes.'"

*State v. Bishop*, 207 Neb. at 15–16, 295 N.W.2d 698

This conversation and Campbell's statement in his deposition concerning the trial judge's response to his oral motion reveal that the trial court did not explore or give Campbell the opportunity to explore the potential conflicts that might arise during trial, but, rather, gave the impression of being willing to appoint separate counsel only if Campbell could show that one of the petitioners intended to incriminate another. Such a showing is clearly more than is required by law:

"... While the potential for prejudice is not so inherent as to require a per se rule of conflict, it is nonetheless sufficiently pervasive that only a minimal showing of conflict should be required to invoke constitutional protection." *United States v. Lawriw*, 568 F.2d 98, 101, 102 (C.A. 8th Cir. 1977)

As noted in the *Holloway* opinion, most courts have held since the decision in *Glas-*

*ser* that an attorney's request for the appointment of separate counsel, based on his representations as an officer of the court regarding a conflict of interest, should be granted, because an attorney is in the best position to determine when a conflict of interest exists or will develop during trial and to inform the court of such a conflict. *Holloway v. Arkansas*, 435 U.S. at 485–486, 98 S.Ct. at 1179. The trial court in this case, by utilizing such a stringent standard to evaluate Campbell's requests for appointment of separate counsel, clearly discouraged Campbell's pursuit of the separate counsel claim.

The error of the trial court in failing to make a meaningful inquiry into Campbell's representations that there was a potentiality for conflicts among the petitioners at trial was compounded by the trial court's stance during the plea negotiations which resulted in the petitioners' guilty pleas. During the negotiations Bishop repeatedly expressed to his counsel and codefendants that he did not wish to accept the plea bargain offered by the prosecutor. In contrast, Yates and Davis did want to accept the plea bargain. While Campbell did not renew his motion for appointment of separate counsel at that time, he did inform the trial court of the existence of this actual conflict among the petitioners. The trial court then had the affirmative duty under *Cuyler v. Sullivan*, supra, 446 U.S. at 347, 100 S.Ct. at 1717, to inquire into the propriety of Campbell's multiple representation. However, rather than make such an inquiry or take steps to alleviate the potential prejudice, the trial judge exacerbated the problem by requiring that all three codefendants enter the plea bargain or proceed with trial, with Campbell as defense counsel.

Because the trial judge, when faced with the representations of Campbell, failed to appoint separate counsel or take adequate steps to ascertain whether the situation warranted separate counsel, as required by *Holloway*, the petitioners are relieved of the burden of showing that an actual conflict of interest adversely affected Campbell's representation of their inter-

ests. However, even if the more stringent standard of *Cuyler* were applicable to this case, I find that the petitioners have satisfied their burden under that standard.

The Supreme Court has said that "[j]oint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing." *Holloway v. Arkansas*, 435 U.S. at 489–490, 98 S.Ct. at 1181. The instant case is replete with examples of what Campbell was prevented from doing and may have been prevented from doing had the trial continued, as a result of his multiple representation of the petitioners. Because the trial court denied his motions for separate counsel and for separate trials, Campbell was restricted to presenting a defense that would work for all of the petitioners simultaneously—that none of the petitioners committed the crimes with which they were charged. Campbell was not free to—and did not—explore the possibility of other defenses that may have been beneficial to one petitioner but not another. In keeping with this defense posture, Campbell was unable to develop adequately the inconsistencies in the identification testimony of the state's witnesses without the risk of incriminating one petitioner for the benefit of another. Specifically, Campbell was precluded from exploiting the inconsistency of the state's identification witnesses' testimony identifying both Bishop and Yates as the robber wearing the white sweatshirt, because to do so would have inculpated one of the petitioners while exculpating the other. Campbell was similarly curtailed in his ability to cross-examine the state's witnesses on behalf of Davis, because of the potential of damaging the "all or none defense" he was forced to present. Campbell was further aware during the presentation of the state's evidence that the successful alibi defense of one of the petitioners could incriminate the other two, or in the alternative, if the state destroyed the alibi testimony of one of the petitioners, it might be harmful to the credibility of the other petitioners' defenses. In this regard, Campbell failed to cross-examine on behalf of Yates the state's witness Hawthorne as to that witness' familiarity with Yates. Had this testimony been developed, it would have tended to corroborate Yates' alibi defense that he had a legitimate reason for being in the area of the Drake Court Apartments on the evening of his arrest. Campbell admitted in his deposition that if he had represented only Yates, he could have gone forward with an affirmative alibi defense to which both Yates and his mother could have testified. However, to present an alibi defense on behalf of Yates but no such defense on behalf of Bishop and Davis would have tended to incriminate the latter two petitioners. Similarly, Campbell had available to him witnesses who could have testified that the petitioners Bishop and Davis left home that evening without coats, thereby explaining why they were without coats when arrested by the Omaha police (coats were found stashed behind a radiator in the Drake Court Apartments).

However, similar exculpatory testimony was not available to Yates, and for Campbell to have stressed the fact in favor of Bishop and Davis would have tended to emphasize Yates' lack of a similar explanation. During both the state's presentation of its evidence and the plea negotiations, Campbell was fully aware that each petitioner intended to testify in his own behalf. Campbell was under the mistaken impression that one of the petitioners had been convicted of a felony, and he believed that the admission of this fact, should the petitioners decide to take the stand, would be harmful to all of the petitioners. For this reason he was apprehensive about putting the petitioners on the stand. Campbell was also apprehensive about calling Yates' family to testify as to his alibi defense, because he feared that the family members, who were eager to aid Yates in his defense, might incriminate Bishop and Davis with their testimony. Campbell's inability during the plea negotiations to provide each petitioner with independent advice, unimpaired by the interests of the other petitioners, and his inability during sentencing to minimize the culpability of Davis and Bishop without emphasizing that of Yates, fur-

ther demonstrate the adverse effect the conflicting interests had upon Campbell's representation of the petitioners.

While I do not believe that the petitioners must demonstrate that an actual conflict in their interests adversely affected Campbell's performance, I do conclude that they have in fact made such a demonstration. Therefore, under the standard of either *Holloway* or *Cuyler*, the petitioners have established that they were denied effective assistance of counsel by Campbell's contemporaneous representation of each of their interests.

### VI.

### Voluntary and Intelligent Nature of the Pleas

The petitioners, in deciding whether to plead guilty, were entitled to the effective assistance of counsel, untrammelled by conflicting loyalties. In *Dukes v. Warden*, 406 U.S. 250, 92 S.Ct. 1551, 32 L.Ed.2d 45 (1972), the Supreme Court recognized that a conflict of interest on the part of an attorney representing criminal codefendants could render a defendant's plea of guilty involuntary and unintelligent. However, the court concluded that under the facts of the case the petitioner had failed to establish that his attorney's alleged conflict of interest affected his plea of guilty:

" 'There is nothing in the record before us which would indicate that the alleged conflict resulted in ineffective assistance of counsel and did in fact render the plea in question involuntary and unintelligent. [Petitioner] does not claim, and it is nowhere indicated in the finding, nor could it be inferred from the finding, that either Attorney Zaccagnino or Attorney Delaney induced [petitioner] to plead guilty in furtherance of a plan to obtain more favorable consideration from the court for other clients.... Neither does the finding in any way disclose, nor is it claimed, that [petitioner] received misleading advice from Attorney Zaccagnino or Attorney Delaney which led him to plead guilty.... Moreover, the trial

court specifically found that when [petitioner] engaged Zaccagnino as his counsel, he knew that Zaccagnino was representing two defendants in the unrelated case in which he was a codefendant, that he never complained to the court that he was not satisfied with Attorney Zaccagnino because of this dual representation, that he was not represented at the entry of his plea by Attorney Zaccagnino, that he was represented by Attorney Delaney at the entry of his plea, that he had a lengthy conversation with Attorney Delaney prior to entering his plea which he recalled completely, and that on specific inquiry by the court before he pleaded guilty, he told the court that he was satisfied with the representation by Attorney Delaney. The court did not err in concluding that [petitioner's] plea was not rendered involuntary and unintelligent by the alleged conflict of interest.' " 406 U.S. at 256–257, 92 S.Ct. at 1554–1555 (quoting the Connecticut Supreme Court)

The differences between the facts in *Dukes* and this case are readily apparent. The petitioner Bishop claims that Campbell induced Bishop to plead guilty in order to obtain a favorable plea bargain for Davis and Yates, and this is admitted by Campbell. Indeed, Yates stood to gain the most benefit from the plea bargain, because it included the dismissal of the shooting charge against him, and the plea bargain would be available to Yates only if Bishop agreed to it. The petitioner Bishop testified that he pleaded guilty on the understanding that he could then appeal his conviction and upon reversal obtain a separate trial with separate counsel. All of the petitioners repeatedly requested of Campbell that they be appointed separate counsel and Campbell in turn relayed these requests to the court in the form of a written and an oral motion. Furthermore, while the petitioners represented to the trial judge that they were satisfied with Campbell's performance, the trial judge did not specifically inquire into the petitioners' satisfaction with the *joint* representation by Campbell. Representation of the petitioners is further diluted by the fact that Campbell told the

petitioners that the judge's questions were a mere formality and that in order for the judge to accept the petitioners' guilty pleas they would have to respond affirmatively to each of the judge's questions.

The Court of Appeals for the Fourth Circuit was presented with a factual situation of conspicuous similarity to that in this case in *United States v. Truglio*, 493 F.2d 574 (C.A. 4th Cir. 1974). In *Truglio*, the same defense attorney represented five codefendants charged with federal crimes. After two days of the government's evidence in a joint trial, the defendants' counsel and the United States' attorney entered into plea discussions. A proposal was made whereby Truglio and one other codefendant would plead guilty to one felony count, one codefendant would plead guilty to a misdemeanor count, and the counts against the two remaining codefendants would be dismissed. Upon being informed of the proposal, the defendants were called into court and counsel for the defendants informed the court that all codefendants were willing to accept the bargain except Truglio, who had not yet decided. The prosecutor then announced that the proposed plea bargain would be agreed to by the government only if all the defendants agreed to it. Upon this representation, Truglio indicated he would enter a plea of guilty. The trial judge then informed the defendants of their right to proceed to trial and inquired whether they were in fact guilty of the crimes charged and whether any promises or threats induced them to enter their guilty pleas. The court then accepted the three guilty pleas. On the following day Truglio moved to withdraw his plea on the ground that it had been entered involuntarily and without effective assistance of counsel. Specifically, the motion referred to the "package deal" forced upon the defendants and the pressure placed upon Truglio to enter the plea of guilty in order to enable his codefendants to obtain the benefit of the plea bargain. The motion was overruled. The Fourth Circuit, in reversing Truglio's conviction, held that the circumstances of the case "called for an in-depth inquiry by the court to determine that Truglio's guilty plea was a voluntary act on his part, free from any coercive influence resulting from the multiple representation by [his counsel] or the nature of the proposed bargain itself." 493 F.2d at 579.

> " . . . A guilty plea has been described as 'perhaps the most devastating waiver possible under our Constitution,' and the obligation of the trial court to monitor the constitutional rights of a defendant 'is not to be discharged as a mere matter of rote, but with sound and advised discretion.'" (citation omitted) *Id.*

The Fourth Circuit held that the trial court's inquiry as to whether the petitioner's plea was induced by any promises or threats was relevant but not conclusive as to the voluntariness of the petitioner's guilty plea:

> " . . . [T]he fact that the defendant in open court has stated at the time of his plea that it was not coerced, while evidential on the issue, does not foreclose further inquiry." *Id.*, at 579

A similar result and rationale were reached in *Mone v. Robinson*, 430 F.Supp. 481 (U.S. D.C.Conn.1977).

 It is undisputed that the petitioner Bishop did not want to enter the "package deal" pressed upon him by the trial court. Campbell, forced into the impossible position of representing the conflicting interests of Bishop, Davis, and Yates, quite understandably encouraged all three to accept the plea bargain, admittedly more favorable to Yates than to Bishop or Davis, thus avoiding the difficulties certain to arise in the presentation of the petitioners' joint defense. It is clear as to the petitioner Bishop that his guilty plea was induced by the advice of counsel, whose loyalties were not only to the interests of Bishop but also of Davis and Yates.

While not as apparent, I believe that the same conclusion must be reached as to the petitioners Davis and Yates. As admitted by Campbell in his deposition, he did not specifically analyze with each petitioner during the plea negotiations the strengths and weaknesses of the state's case as com-

pared to the strengths and weaknesses of the petitioner's defense. Furthermore, even if Campbell had undertaken such an analysis, it would have been tainted by Campbell's inability during the preceding two days of the state's evidence to cross-examine adequately the state's identification witnesses and his inability, should the petitioners proceed with the trial, to represent zealously each of their separate interests. In view of the bleak trial picture that was to be painted if the petitioners made the joint decision to continue to trial represented by the same counsel, it can hardly be said that Davis' and Yates' decisions to plead guilty were not based on the advice of counsel who admittedly could not effectively represent their interests.

## VII.

### Prejudice

Whether the petitioners were actually prejudiced by Campbell's contemporaneous representation of their conflicting interests is an inquiry this court need not make. The observations of the Supreme Court in *Holloway* concerning this issue are particularly applicable to this case:

> "Finally, a rule requiring a defendant to show that a conflict of interests—which he and his counsel tried to avoid by timely objections to the joint representation—prejudiced him in some specific fashion would not be susceptible of intelligent, even-handed application.... [I]n a case of joint representation of conflicting interests the evil—it bears repeating—is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process. It may be possible in some cases to identify from the record the prejudice resulting from an attorney's failure to undertake certain trial tasks, but even with a record of the sentencing hearing available it would be difficult to judge intelligently the impact of a conflict on the attorney's representation of a client. *And to assess the impact of a conflict of interests on the attorney's options, tactics, and decisions in plea negotiations would be virtually impossible.* Thus, an inquiry into a claim of harmless error here would require, unlike most cases, unguided speculation." (Emphasis added) 435 U.S. at 490–491, 98 S.Ct. at 1181–1182

It would involve this court in mere speculation to inquire whether, had separate counsel been appointed to represent the petitioner, the state's evidence would have come in differently or different defenses would have been successfully presented or the petitioners would have decided to plead guilty. It is, of course, entirely possible that even with separate counsel the petitioners might have made the same decisions.

> "... The point is only that in making such decisions, petitioner is entitled to the loyal and zealous assistance of independent counsel." *Mone v. Robinson*, 430 F.Supp. at 488

Because I find that the petitioners were deprived of their Sixth Amendment right to effective assistance of counsel and that their guilty pleas were entered as a result of advice received from counsel who suffered conflicting loyalties, an order will be entered granting the petitioners' requests for habeas relief.