STATE OF NEBRASKA, APPELLEE, V.
JOHN EDWARD RUST, ALSO KNOWN AS
JOHN DEWITT, APPELLANT.

303 N.W.2d 490

Filed March 20, 1981. No. 43019.

Paul E. Watts and Gerald E. Moran for appellant.

Paul L. Douglas, Attorney General, and J. Kirk Brown for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

WHITE, J.

This case is now before this court appealing the denial of a motion for post conviction relief. On February 2, 1977, this court affirmed the jury verdict convicting the defendant, John E. Rust, of felony murder and the decision of a three-judge panel sentencing him to death for that murder. *State v. Rust*, 197 Neb. 528, 250 N.W.2d 867 (1977). Defendant cited as the basis for vacating and setting aside his conviction and sentence that he had had prejudicially ineffective assistance of trial counsel; that he was entitled to the benefits of Neb. Rev. Stat. § 29-2522 (Reissue 1979), as amended by 1978 Neb. Laws, L.B. 711, adopted subsequent to his sentencing; that the provisions of Nebraska's death penalty law violate the eighth and fourteenth amendments of the U.S. Constitution. The District Court denied defendant's motion and defendant appeals. We affirm the decision of the District Court.

Defendant assigns as error the following: (1) The finding of the trial court that the Nebraska death penalty law does not violate the eighth and fourteenth amendments prohibition against cruel and unusual punishment; (2) The finding that defendant was not denied effective assistance of trial counsel; (3) The District Court's failure to apply the provisions of L.B. 711; and (4) The District Court's failure to hold that Nebraska's death penalty is unconstitutional as applied to defendant.

"[A] motion to vacate a judgment and sentence under the Post Conviction Act cannot be used as a substitute for an appeal or to secure a further review of issues already litigated." *State v. Holtan*, 205 Neb. 314, 317, 287 N.W.2d 671, 674 (1980). In his direct appeal to this court, defendant raised the constitutional issues he now combines into assignment of error (4) and they will not be reconsidered.

Defendant argues under assignment of error (1) that his sentence is cruel and unusual punishment

in light of the confession of a codefendant, Ronald Ell, that Ell, not Rust, actually shot and killed the victim. This is apparently based on our discussion in *State v. Rust, supra* at 540-41, 250 N.W.2d at 875, regarding the propriety of sentencing one codefendant to life imprisonment and the other to death. In his direct appeal, defendant argued that his death sentence was arbitrary and discriminatory because Ell received a life sentence. We held that as a participant in the felony, Ell "was guilty of the murder of Kellogg only as an aider and abettor. He did not actually kill anyone. Although he was equally guilty with Rust in the robbery, his participation in the actual killing was relatively minor. See mitigating factor (e), § 29-2523, R.R.S. 1943." *State v. Rust, supra* at 541, 250 N.W.2d at 875.

Subsequent to Ell's sentencing, Ell appeared at defendant's post conviction relief hearing and testified that he had shot the victim. When defendant and Ell were arrested, the gun that was used to shoot the victim was found lying near the defendant. At defendant's post conviction relief hearing, Ell testified that during the shoot-out between the police and defendant and himself, Ell shot and killed the victim, then gave defendant his gun and took defendant's gun because defendant's gun had jammed. At no time during defendant's trial nor during Ell's trial did either defendant suggest this version of the crime to their attorneys or to the court. Ell's testimony was uncorroborated and the District Court judge at defendant's post conviction relief hearing found it unbelievable. A prison guard at the penal complex testified at the hearing that defendant admitted shooting the victim and the police officer again identified the defendant as the person who shot the victim. The record supports that finding. Defendant's contention in this regard is without merit.

Defendant's third assignment of error is likewise without merit. "L.B. 711, Laws 1978, was not enacted

until after the sentence in this case had been imposed and became final. Having become a final judgment prior to the effective date of L.B. 711, it is not affected by the adoption of L.B. 711. No capital case in which a final sentence was imposed prior to the effective date of L.B. 711, Laws 1978, is subject to the provisions of the act and will not be reviewed in light of the act." *State v. Holtan, supra* at 316, 287 N.W.2d at 673. The amendment of a statute under which an accused was convicted does not affect the legitimacy of his conviction or the propriety of his sentence. *United States v. Rojas-Colombo,* 462 F.2d 1091 (5th Cir. 1972), *cert. denied,* 410 U.S. 990, 93 S. Ct. 1507, 36 L. Ed. 2d 188.

In his second assignment of error, defendant argues his trial counsel was prejudicially ineffective. Specifically, defendant alleges that his trial attorney failed to make an opening statement; failed to impeach witnesses on inconsistencies; failed to take defendant to the scene of the shooting; failed to depose witnesses after the court ruled, permitting depositions to be taken; untimely filed his pretrial motions; failed to discuss trial strategy with defendant; failed to argue that the felony robbery had terminated before the shooting; failed to notify the court that defendant was dissatisfied with trial counsel; failed to move for a mistrial on voir dire of jurors; failure to review police reports; failed to prepare for trial; failure to renew motion to sever after opening statements; failed to move for a mistrial after evidence of defendant's use of an alias was introduced, after evidence that weapon used in the robbery was stolen was introduced; failed to determine whether an insanity defense existed; failed to poll the jury; failure to prepare his own motion for new trial; failed to attend the hearing regarding sentencing ground rules; failed to discuss sentencing strategy with defendant; failed to introduce mitigating factors at the sentencing hearing other than those enumerated in the statutes; failed to review

presentence investigation report; failed to inform sentencing court that State had discussed possibility of a plea bargain; failed to call to the court's attention that the prosecution had proven only two aggravating circumstances when, in its sentencing order, the court found there were four aggravating circumstances; failure to offer evidence in the form of a letter from a South Dakota state's attorney concerning codefendant Ell's violent tendencies; failed to point out to sentencing court that its fact interpretation of the shooting incident was incorrect; and failed to prepare and argue effectively at the sentencing hearing.

Our standard for determining whether or not counsel for a defendant in a criminal prosecution has provided adequate representation is "'that trial counsel perform at least as well as a lawyer with ordinary training and skill in the criminal law in his area, and that he conscientiously protect the interests of his client.'" *State v. Fowler*, 201 Neb. 647, 655, 271 N.W.2d 341, 347 (1978).

The burden of proof is on the defendant and he must establish by a preponderance of the evidence the incompetency of counsel. *State v. Auger & Uitts*, 200 Neb. 53, 262 N.W.2d 187 (1978). In his order denying defendant post conviction relief, the District Court judge found generally that defendant had not met his burden of proof and did not establish that he had been prejudiced by the action or inaction of his counsel.

Specifically, the District Court ruled that defendant's contentions concerning his counsel's failure to argue that the felony had ended, to make evidentiary objections, to properly cross-examine witnesses, and to present evidence that codefendant Ell, not defendant Rust, had killed the victim were without merit. The District Court likewise found that defendant, at the post conviction hearing, did not show the existence of mitigating factors in addition to those counsel raised at the sentencing hearing and that contention, therefore, was without merit. "The defendant has the burden

of establishing a basis for relief in a post conviction proceeding, and the findings of the District Court in denying such relief will not be disturbed on appeal unless they are clearly erroneous." *State v. Bishop, Davis, and Yates*, 207 Neb. 10, 19, 295 N.W.2d 698, 704 (1980). The record in this case supports the findings of the trial court.

The determination of sufficiency of counsel must, of course, be made within the context of the facts of a particular case. In this case defendant's trial counsel had the following to deal with: (1) The testimony of an eyewitness that defendant shot Kellogg; (2) The testimony of a police officer involved in the shoot-out that he had followed defendant from the time he left the parking lot of the store through the time the defendant was apprehended; and (3) The testimony of an officer who stated he was shot by the defendant and the fact that the gun that wounded that officer and killed Kellogg was found near defendant after he was shot and apprehended. Defendant's counsel testified that when he confronted defendant with these facts, defendant offered no practical suggestions concerning how they should proceed with his defense. Defendant's only contribution to his own defense was that his attorney offer to the court the story that defendant was shot at as he was walking past the area of the shoot-out and returned the fire.

Trial counsel for defendant testified at defendant's post conviction hearing. Concerning his failure to make certain evidentiary objections, cross-examine witnesses, and make an opening statement, he stated that his actions were the result of tactical decisions. "'[W]e grant due deference to the discretion of defense counsel to formulate trial tactics.'" *State v. Fowler, supra* at 656, 271 N.W.2d at 347.

We will not require defense counsel to develop ridiculous trial tactics such as defendant's counsel would have been required to do had he chosen to present defendant's tale that defendant was shot when he

inadvertently passed by the shoot-out. Furthermore, the record supports the District Court's finding that defendant demonstrated no prejudice due to any of his counsel's tactics.

The mitigating factor defendant brought to the court's attention was a letter sent by a South Dakota state's attorney to the chief of detectives of the Omaha Police Department. The letter expressed the attorney's opinion that Ell was a highly criminal and dangerous person. At the post conviction trial, the District Court judge stated that the evidence was not relevant and could not be considered a mitigating factor. We agree. Because the facts establish that Rust murdered the victim, the criminal nature of his codefendant is not probative of "any aspect of a defendant's character or record [or] any of the circumstances of the offense that [could be proffered] as a basis for a sentence less than death." *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S. Ct. 2954, 57 L. Ed. 2d 973 (1978).

Finally, the District Court's determination that Ell's testimony was unbelievable is supported by the evidence and, as a result, defendant's related arguments concerning ineffective assistance of trial counsel are immaterial. "It is the general rule that it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh evidence. Such matters are for the trier of fact, and the verdict must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it." *State v. Fowler*, 201 Neb. 647, 658, 271 N.W.2d 341, 348 (1978).

For the reasons set out above, we find that the decision of the trial court denying defendant post conviction relief is supported by the evidence and is affirmed.

AFFIRMED.

KRIVOSHA, C.J., concurring in part, and in part dissenting.

I concur in the majority's opinion in this case in all respects save with regard to the majority's conclusion that the imposition of the death penalty in this case is constitutionally permissible. In that regard, I dissent.

Even if I disregard the provisions of 1978 Neb. Laws, L.B. 711, now Neb. Rev. Stat. §§ 29-2521.01 et seq. (Reissue 1979), adopted subsequent to the sentencing in this case, I must of necessity still conclude that the imposition of the death penalty in this case is in violation of the appellant's constitutional rights which existed prior to the adoption of L.B. 711.

A reading of the various opinions rendered in the case of *Furman v. Georgia*, 408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972), makes it manifestly clear that the adoption of statutes such as Neb. Rev. Stat. § 29-2522 (Reissue 1979), and the provisions of L.B. 711, are simply a response to the U.S. Supreme Court's recognition that it is a violation of an individual's constitutional rights when the decision to execute is arrived at in an arbitrary and discriminatory manner. The fact that we may create criteria to aid us in imposing the death penalty does not overcome the constitutional prohibition if, after applying the formula, we nevertheless continue to impose the penalty in an arbitrary and capricious manner.

As noted by Mr. Justice Douglas in *Furman, supra* at 242: "The generality of a law inflicting capital punishment is one thing. What may be said of the validity of a law on the books and what may be done with the law in its application do, or may, lead to quite different conclusions.

"It would seem to be incontestable that the death penalty inflicted on one defendant is 'unusual' if it discriminates against him by reason of his race, religion, wealth, social position, or class, or if it is imposed under a procedure that gives room for the play of such prejudices."

And, further, in the same *Furman* decision we find the words of Mr. Justice Stewart, wherein he says at 390-91: "These death sentences are cruel and unusual in the same way that being struck by lightning is cruel and unusual. For, of all the people convicted of rapes and murders in 1967 and 1968, many just as reprehensible as these, the petitioners are among a capriciously selected random handful upon whom the sentence of death has in fact been imposed. My concurring Brothers have demonstrated that, if any basis can be discerned for the selection of these few to be sentenced to die, it is the constitutionally impermissible basis of race. [Citation omitted.] But racial discrimination has not been proved, and I put it to one side. I simply conclude that the Eighth and Fourteenth Amendments cannot tolerate the infliction of a sentence of death under legal systems that permit this unique penalty to be so wantonly and so freakishly imposed."

An examination of but a few cases within this jurisdiction makes it clear that the imposition of the death penalty in the instant case is, indeed, arbitrary and capricious.

In *State v. Scott*, 200 Neb. 265, 263 N.W.2d 659 (1978), the defendant was charged with murder in the perpetration of or in an attempt to perpetrate a robbery. The evidence disclosed that the defendant entered the home of William and Bertha McCormic in Omaha and demanded money at gunpoint. A scuffle ensued, Mr. McCormic was shot twice and killed, and Mrs. McCormic was shot twice and wounded. Mr. McCormic was 92 years of age at the time. Mrs. McCormic was 83, had impaired vision, and could not describe her assailant with any specificity. The defendant was sentenced to life imprisonment.

In *State v. Prim*, 201 Neb. 279, 267 N.W.2d 193 (1978), the defendant was charged with first degree murder, having shot and killed the defenseless operator of a gas station during the commission of a rob-

bery. He was sentenced to life imprisonment.

In *State v. Hatcher*, unappealed to this court, the defendant, being pursued by a police officer, engaged in a struggle with the police officer, and as the officer struggled with the defendant the officer's gun went off twice, the second time hitting the officer in the head. The defendant was sentenced to life imprisonment.

In *State v. Brown*, unappealed to this court, the defendant killed his victim during a robbery. He was sentenced to life imprisonment.

In *State v. Jimmie Ray Anderson*, unappealed to this court, a 34-year-old defendant and his wife resisted arrest by a patrolman, and in the struggle in the police car the patrolman was shot and killed. The defendant was sentenced to life imprisonment.

In *State v. Floyd*, unappealed to this court, the defendant, 37 years old, shot and killed an unarmed gas station attendant during the course of a robbery. He was sentenced to life imprisonment.

Each of those killings was senseless and unforgiving. Yet we, as courts, are required to be sure that the Constitution of both this state and the United States is always followed, regardless of other factors. Where the U.S. Supreme Court has declared that the arbitrary imposition of the death penalty violates the Constitution, we have no choice and may not approve the imposition of the death penalty when, as here, it appears to be arbitrarily imposed.

The words of Mr. Justice Marshall, joined by Mr. Justice Brennan, in *Godfrey v. Georgia*, 446 U.S. 420, 100 S. Ct. 1759, 64 L. Ed. 2d 398 (1980), appear each day to be more applicable. Marshall said in *Godfrey v. Georgia, supra* at 438-39: "I believe that the death penalty may not constitutionally be imposed even if it were possible to do so in an evenhanded manner. But events since *Gregg* make that possibility seem increasingly remote. Nearly every week of every year, this Court is presented with at least one peti-

tion for certiorari raising troubling issues of noncompliance with the strictures of *Gregg* and its progeny. On numerous occasions since *Gregg*, the Court has reversed decisions of State Supreme Courts upholding the imposition of capital punishment, frequently on the ground that the sentencing proceeding allowed undue discretion, causing dangers of arbitrariness in violation of *Gregg* and its companion cases. These developments, coupled with other persuasive evidence, strongly suggest that appellate courts are incapable of guaranteeing the kind of objectivity and evenhandedness that the Court contemplated and hoped for in *Gregg*."

I would affirm the action of the trial court in denying post conviction relief except with regard to the matter of the death penalty. In that regard, I would order the appellant be incarcerated for the balance of his natural life.